UNITED ELECTRICAL, RADIO AND MACHINE WORKERS OF AMERICA LOCAL 411, C. I. O., AN UNINCORPORATED ASSOCIATION, PETITIONER, v. NATIONAL PNEUMATIC COMPANY, A CORPORATION OF WEST VIRGINIA, AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, DEFENDANT.

Argued July 15, 1946—Decided July 19, 1946.

Before Justice BODINE (at chambers under the statute).

For the petitioner, *Cherny & Levine.*

For the defendant, *Arthur T. Vanderbilt* and *G. Dixon Speakman.*

BODINE, J. The petitioner in this case seeks an order under *R. S.* 2:40–12 to require the performance of a written agreement providing for arbitration. The facts in the case were stipulated as follows:

"1. Defendant is and has been during all the times concerned in this controversy a corporation of the State of West Virginia, having a license to do business in the State of New Jersey and having a place of business in New Jersey, namely a manufacturing plant, at 970 New Brunswick Avenue, Rahway, New Jersey.

"2. Petitioner is the duly authorized, certified and recognized collective bargaining agent of the production and maintenance employees of the defendant at its Rahway, New Jersey, manufacturing plant.

"3. On the 30th day of October, 1945, Petitioner and Defendant entered into a collective bargaining agreement in

effect up to August 1st, 1946, relating to rates of pay, wages, hours of work, and other conditions of employment governing the Defendant's aforesaid employees, * * *.

"4. Section 21, sub-sections (b) and (c) of said collective bargaining agreement provide as follows:

"'(b) The Company agrees to increase the rate of each employee and of all rate ranges by the sum of five cents (5c) per hour on October 1st, 1945; by a further sum of five cents (5c) per hour on December 1st, 1945; and by a further sum of five cents (5c) per hour on February 1st, 1946.

"'(c) Subject to the conditions and limitations hereinafter set forth, the Company agrees to increase the rate of each employee and of all rate ranges by a further sum of five cents (5c) per hour on April 1st, 1946, and by a further sum of five cents (5c) per hour on June 1st, 1946. However, it is expressly understood and agreed that unless, by March 1st, 1946, the Company's volume of business for billing to its customers on goods manufactured or produced at the Company's plant at Rahway, N. J., then averages $291,000 per month or more, the Company has the right to reopen the question as to whether or not the aforesaid increases of five cents (5c) per hour pertaining to April 1st, 1946, and of five cents (5c) per hour pertaining to June 1st, 1946, shall become effective. If the Company exercises its right to reopen the said question as aforesaid, by written notice to the Union or before April 1st, 1946, such additional five-cents-per-hour increase pertaining to April 1st, 1946, and such additional increase of five cents (5c) per hour pertaining to June 1st, 1946, shall not become effective; and the wage provisions of this Agreement which pertain to the April 1st, 1946, five-cents-per-hour increase and to the June 1st, 1946, five-cents-per-hour increase shall be deemed reopened subject to renegotiation with the Union with respect thereto.'

"5. By March 1st, 1946, Defendant's volume of business for billing to its customers of goods manufactured or produced at Defendant's plant at Rahway, N. J., did not average $291,000 per month or more.

"6. On or before April 1st, 1946, Defendant exercised its right to reopen the question as to whether or not the increases

of five-cents (5c) per hour pertaining to April 1st, 1946, and of five-cents (5c) per hour pertaining to June 1st, 1946, should become effective pursuant to the provisions of Section 21, sub-section (c), of said collective bargaining agreement by serving Petitioner with the required notice dated March 19th, 1946, a copy of which notice is annexed hereto, made a part of this stipulation, and marked 'Schedule B.'

"7. Thereafter Petitioner and Defendant negotiated but failed to arrive at an agreement.

"8. Section 53 and Section 54 of said collective bargaining agreement provide as follows.

*'Section 53. Grievances*

" '(a) It is mutually agreed that the prompt settlement, disposition and adjustment of all disputes, disagreements, complaints and grievances is desirable in the interest of sound relations between the Union and the Company.

" '(b) The differences, disputes, complaints and grievances that may arise between the Union and the Company shall be taken up as follows:

" '(1) Between the aggrieved employee and the department Steward on the one hand, and the department supervisor on the other. If no satisfactory settlement is reached by the close of the next working day; the matter shall be referred to (2) The department Steward and the Chief Steward on the one hand the Production Superintendent, Maintenance Superintendent or the Chief Inspector on the other hand. If no satisfactory settlement is reached between them by the close of the next work day the matter shall be referred to (3) The Factory Committee, which shall consist of a grievance committee of three (3) members representing the Union and three (3) representatives of the Company. If no satisfactory settlement is reached by the Factory Committee by the close of the second succeeding working day, the matter shall be referred to (4) Union district or international representatives and the Grievance Committee on the one hand, and the Company's representatives, including either the General Manager, Plant Manager or both, on the other hand. If no satisfactory settlement is arrived at, then the dispute, complaint

or grievance may be submitted to arbitration by either party after forty-eight (48) hours, as hereinafter provided.

"'(c) All grievances and answers to grievances shall be in writing and signed, except in case of an emergency grievance.

"'(d) The privilege of Stewards, the Assistant Chief Stewards, the Chief Steward, the President, the Vice-President, if employed on the night shift, members of the Grievance Committee, and Union members of the Joint Union-Management Classification Committee to leave their work during working hours without loss of pay, is extended with the understanding that the time will be devoted to the prompt investigation and handling of grievances or requests for reclassification, as the case may be, and that said privilege will not be abused. It is agreed that they will continue to work at their assigned jobs at all times except when they leave their work to investigate or handle grievances or requests for reclassification, as the case may be, as provided herein. This privilege shall exist only to the extent that it is necessary for the above-enumerated Union representatives to carry out their duties under the grievance procedure herein set forth; it being specifically understood that the activities of departmental Stewards on the day shift shall be confined to their own respective departments except in carrying out their duties under the second step of the grievance procedure.

"'(e) The Union officers, Stewards, committeemen and representatives shall be governed by plant rules regarding employees entering or leaving the plant. However, they may leave the plant when arrangements are made with the company of Local 411 and/or by its Chief Steward.

"'(f) Any department Steward, at his request, may have the aid of an Assistant Chief Steward or of the Chief Steward in the handling of any grievance.

"'(g) It is agreed that in the absence of any department Steward the Chief Steward or the Assistant Chief Steward shall serve in his place.

"'(h) No employee shall be called to an interview with a supervisory or managerial employee with regard to any disciplinary matter without the presence of the employee's department Steward at such interviews.

*" 'Section 54. Arbitration*

" '(a) All differences, disputes, complaints and grievances between the parties that shall not have been satisfactorily settled after following the procedure hereinbefore set forth shall, at the request of either party, be promptly submitted to arbitration by a Board of Arbitration. The Board of Arbitration shall consist of one (1) member selected by the Union and one member selected by the Company, and a third impartial person selected by the two. If no agreement can be reached on the third Arbitrator within forty-eight (48) hours after submission, the Arbitrator shall be selected by the National War Labor Board, or after its abolishment by the Conciliation Service of the United States Department of Labor, at the request of both parties jointly, and if both parties do not join, either party may make the request. Such third Arbitrator shall be the Chairman of the Board of Arbitration.

" '(b) A decision by any two (2) members of the Board shall constitute the decision of the Board and shall be binding on the Company and the Union. In the absence of a majority vote the decision of the Chairman shall be binding upon the parties. A decision of the Board shall be complied with within five (5) days after the decision is rendered.'

"9. On the 17th day of June, 1946, Petitioner, served Notice of Arbitration upon the Defendant by mailing to the Defendant a letter dated June 17th, 1946, a copy of which letter is annexed hereto, made part of this stipulation and marked 'Schedule C.'

"10. On or about June 19th, 1946, Petitioner, through its attorney, received a letter dated June 18th, 1946, from Defendant, copy of which is annexed hereto, made a part of this stipulation, and marked 'Schedule D.'

"11. Defendant took the position that the wage question involved was not subject to arbitration within the terms of the collective bargaining agreement by a letter dated June 24th, 1946, from defendant's attorneys, duly authorized to act in the premises, to Petitioner, through its attorneys, copy of which is hereto annexed, made a part of this stipulation and marked 'Schedule E.' "

The defendant takes the position that the wage question was not subject to arbitration within the terms of the contract and that the court is powerless in the premises.

In support of its position, I am referred to the following case: *In re Buffalo and Erie Railway Co.*, 250 *N. Y.* 275; 165 *N. E. Rep.* 291. The principle of this case was approved in the following New York cases: *In re Amsterdam Dispatch, Inc., et al.*, 4 *N. Y. S.* (*2d*) 908 (Sup. Ct., App. Div., 1st Dept., 1938); *affirmed, per curiam, sub nom. Amsterdam Dispatch* v. *Devery*, 278 *N. Y.* 688; 16 *N. E. Rep.* (*2d*) 403 (1938). These cases must rest on the facts established. The general principles enunciated are in no sense contrary to the views hereinafter expressed.

It is apparent from the stipulation in this case that there was a wage dispute. It is also apparent from sections 53 and 54 of the elective bargaining agreement that all disputes, disagreements, complaints and grievances are subject to arbitration.

I can find in the agreement itself no clause which in any way limits the arbitration of disputes, disagreements and grievances. It is a well known fact that most labor disputes arise because of a disagreement as to wages. It is not desirable that where the parties have agreed otherwise that the sole remedy be a strike rather than arbitration as intended.

The contract in question, section 31, subsection c, provides for an increase upon certain conditions which did not occur. The company, therefore, gave notice to reopen the question. Since the Local and the company were unable to settle the wage question, the Local sought arbitration. The company's answer was that the wage question was not subject to arbitration. From a broad reading of the contract, I fail to see why not. The purpose desired in labor contracts is that disputes, as the contract in question expressly provides, shall be promptly settled in the interest of a continuance of sound relations between the Union and the company. If the contract so provides, as it does in this case, it is not the function of the court to so construe it so as to defeat the intention of the parties.

Under section 21 of the contract, renegotiations may be with the company and the Union. If such renegotiations fail, as they did in the present instance, the logical thing to do is to turn to section 53 and section 54 of the contract. If there was any doubt as to the correctness of this view, section 55, as follows, confirms the Union's position:

*"Section 55. Strikes, Slow-Downs, Lockouts*

"Since it is the intent of the parties to this Agreement that the procedures herein shall serve as a means for peaceable settlement of all differences, disputes, complaints and grievances that may arise between them, it is agreed that the Union shall not authorize nor participate in any strike or slow-down and the Company agrees that there shall be no lockouts."

The relief sought will be granted and an appropriate order may be submitted.