Amalgamated Association of Street, Electric Railway and Motor Coach Employes of America *v.* Pittsburgh Railways Company, Appellant.

Argued March 18, 1958. Before Jones, C. J., Bell, Chidsey, Musmanno, Arnold, Jones and Cohen, JJ.

reargument refused July 1, 1958.

*Kenneth G. Jackson*, with him *Joseph E. Madva*, and *Thorp, Reed & Armstrong*, for appellant.

*Frank R. Bolte* and *I. J. Gromfine*, with them *O. David Zimring*, *Bernard Cushman* and *H. J. Lehmann*, for appellee.

OPINION BY MR. JUSTICE ARNOLD, May 26, 1958:

Defendant, Pittsburgh Railways Company, appeals from the order of the court below requiring it to submit to arbitration a dispute arising out of an agreement between it and plaintiff, Amalgamated Association of Street, Electric Railway and Motor Coach Employes of America, Division 85, a union representing certain employes of defendant.

Plaintiff has been the bargaining agent for these employes for a period of years, during which it entered into collective bargaining agreements with defendant and its predecessors. On October 5, 1954, the parties entered into an agreement designated "Retirement and Disability Allowance Plan." As its name implies, the plan was set up to provide for retirements and pensions for employes, and was made effective October 1, 1954, for a three-year period. It also provided for automatic renewal for successive three-year periods ". . . unless changed or amended as herein provided." In the event that either party should desire to negotiate changes, the agreement provided that notice be given to the other party at least sixty days before the end of the contract period; and "if the parties cannot reach

an agreement on proposed changes . . . the matter or matters in issue *shall be submitted to a Board of Arbitrators."* (Italics supplied). This board was to be composed of three persons one chosen by the Company, one by the Union, and a third by the persons appointed by the parties.

Plaintiff, in February, 1957, and defendant, in March, 1957, requested changes in the Plan; and negotiations, to no avail, were had in March and April. Pursuant to the agreement, and on April 23, 1957, plaintiff demanded arbitration, which was refused by the Company. Thereupon the Union filed its petition in the court below asking enforcement of the provision to submit to arbitration, either under the Act of 1927, P.L. 381, 5 PS §161, et seq. or under the common law. The court thereafter entered an order requiring arbitration, and defendant appeals, contending that the court was powerless so to act.

Our arbitration act provides, inter alia: (1) "A provision in any written contract, except a contract for personal services, to settle by arbitration a controversy thereafter arising out of such contract, or out of the refusal to perform . . . any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"; (2) "The party aggrieved . . . may petition the court of common pleas of the county . . . for an order to show cause why such arbitration should not proceed . . . The court, upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not at issue, . . . shall make an order directing the parties to proceed to arbitration. . ."

There is no question that the agreement to submit to arbitration was made, nor is there any doubt that the Company failed to comply therewith. It contends,

however, that the Act is inapplicable to the instant question. First, it contends that an award by the arbitrators would be mandatory in nature and under *Goldstein v. International Ladies Garment Workers Union,* 328 Pa. 385, 196 A. 43, such an award cannot be enforced because it cannot "be made the subject of judgments in actions at law." But such decision was based on Section 14 of the Act, and dealt only with "enforcement" of an award; and merely because here an award to be rendered *might* be mandatory in nature is not sufficient reason for denying the relief requested. Having determined that the agreement was made and that there was a failure to comply, as required by the Act, the court ". . . shall make an order directing the parties to proceed to arbitration." It is not, at this point in the proceedings, dependent upon what form the award may take. We are faced with a petition to compel arbitration, not enforcement of an award; and there is nothing to establish the contention of defendant that enforcement of the agreement to arbitrate results in a "vain and useless act." This will be met when the question arises—not at this stage of the proceedings.

Defendant's next contention is that this arbitration clause is not a provision in a written agreement "to settle . . . a controversy thereafter arising out of such contract," the term "controversy" meaning only one involving the meaning and application of the provisions of the agreement. As the court below declared: "The contract in question was concerned with the pension rights of the Company's employees, and the parties, apparently recognizing the need for a continuing agreement in this regard, entered into such a continuing agreement with the provision that changes could be made in its terms at periodic intervals." Recognizing that disputes over such changes might arise, the parties

proceeded to establish the procedure for resolving them. We find nothing in the Act nor in the cases to preclude such an arrangement or denying its enforcement. To say that "controversy" in the Act encompasses only disputes as to meaning and application of the provisions of the agreement is to supply words not existent in the Act. Carrying the provisions of the Act to their logical conclusion, they must be taken to provide the means of resolving the disputes over amendments as the parties voluntarily agreed. In *United Electrical, Radio and Machine Workers of America, Local 411, C.I.O. v. National Pneumatic Co.*, 134 N.J.L. 349, 48 A. 2d 295, the court declared: "The purpose desired in labor contracts is that disputes, as the contract in question expressly provides, shall be promptly settled in the interest of a continuance of sound relations between the Union and the Company. If the contract so provides, as it does in this case, it is not the function of the court to so construe it so as to defeat the intention of the parties." This is particularly applicable here, where the retirement and pension rights of employes of a public transportation company are the subject of arbitration.

Defendant contends, lastly that the instant contract involves "personal services," and therefore that its enforcement is specifically excluded in the Act. But it fails to recognize the distinction fairly made between contracts for personal services and collective bargaining agreements. "Contract in labor law is a term the implications of which must be determined from the connection in which it appears. Collective bargaining between employer and the representatives of a unit, usually a union, results in an accord as to terms which will govern hiring and work and pay in that unit. The result is not, however, a contract of employment except in rare cases; no one has a job by reason of it and no obligation to any individual ordinarily comes into

existence from it alone. The negotiations between union and management result in what often has been called a trade agreement rather than in a contract of employment": *J. I. Case Co. v. National Labor Relations Board*, 321 U.S. 332, 334, 335, 88 L. Ed. 762, 766. The "personal services" exclusion can only be taken to apply to the employe's own contract of employment; otherwise construed, would be to write into the meaning of a collective bargaining agreement something never intended by the parties. See also, *International Ladies' Garment Workers' Union v. Nazareth Mills Company,* 87 Pa. D. & C. 589.

The instant agreement definitely and conclusively falls within the purview of the Act, and is enforceable thereunder. Finding as we do, there is no necessity for deciding whether the agreement is enforceable under common law principles.

Order affirmed.