The Pennsylvania Turnpike Commission, Petitioner, *v.* Sanders & Thomas, Inc., Respondent.

146

Argued December 4, 1973, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate.

*Kenneth M. Cushman,* with him *Howard D. Venzie, Jr.,* and, of counsel, *Edward H. Cushman, John R. Rezzolla, Jay R. Braderman* and *Pepper, Hamilton & Sheetz,* for petitioner.

*Marvin Comisky,* with him *Gilbert Stein, Alan C. Gershenson, William E. Taylor, III,* and, of counsel, *Blank, Rome, Klaus & Comisky,* for respondent.

OPINION BY JUDGE ROGERS, March 11, 1974:
The parties to this appeal are the Pennsylvania Turnpike Commission (hereinafter referred to as

PTC), appellant, and Sanders & Thomas, Inc. (hereinafter referred to as S&T), appellee. The thing appealed from is an award to S&T by arbitrators appointed and acting pursuant to the Act of April 25, 1927, P. L. 381, 5 P.S. §161 et seq.

The parties entered into a written agreement, prepared by PTC and dated June 30, 1969, for the performance by S&T of engineering and design services for new and revised toll collection facilities at nine interchanges at the eastern portion of the Pennsylvania turnpike. The agreement provided that S&T should be paid for its work a fee of 4½% of the construction costs as determined from accepted bid prices on construction contracts, or, in the event that construction contracts were not awarded, the same rate of 4½% of construction costs as estimated by the Chief Engineer of PTC. The contract further required, with regard to S&T's compensation, that PTC should make partial payments monthly based upon an estimated construction cost of $8,000,000. The contract contained the following provision crucial to this appeal: "VII. All questions or disputes respecting any matter pertaining to or arising out of this agreement or any part thereof or any breach thereof, shall be referred to a Board of Arbitration acting under the provisions of the Act of April 25, 1927, P. L. 381, as amended, consisting of a representative selected by each of the parties hereto and a third Arbitrator selected by them. In the event that the two Arbitrators selected by the parties are unable to agree as to the third Arbitrator, such third Arbitrator shall be designated by the American Arbitration Association."

PTC appointed another engineering firm, Michael Baker, Jr., Inc., as its consultant with regard to the work under S&T's contract and directed S&T to communicate with PTC through Baker.

Several months after undertaking the work, S&T became aware that the $8,000,000 estimate of cost for what it was being asked to design was unrealistic. It provided PTC with a new cost estimate in the amount of $14,600,000 and offered to reduce its fee to 4.25%. By resolution made January 6, 1970, PTC accepted the revised estimated cost figure and approved the reduction of S&T's design fee to 4.25%.

In June and August of 1970 bids were taken for two of the facilities designed by S&T in consultation with Baker and the bids came in higher than expected. By November 1970, it became apparent to S&T that the construction cost for the work it was designing would approximate $27,000,000. It so informed Baker and it also offered to reduce its fee to 4.165% of this estimate. In January 1971, when its work was 96.7% completed, S&T billed PTC, through Baker, for services based upon a fee percentage of 4.165% of $27,-153,047. Baker would not approve this payment until PTC approved.

In early April, 1971, S&T asked PTC to amend their agreement to provide a fee of 4.25% of $27,153,-047. On April 27, 1971, PTC adopted a resolution approving an increase in the construction costs estimate to $21,000,000 and approved a fee of 3.5% for partial payment purposes.

Negotiations concerning the fee continued. On July 7, 1971 a conference for the purpose of resolving the differences was held, attended by the Chairman and one other Commissioner of PTC, PTC's General Counsel and his assistant, PTC's Chief Engineer, and representatives of both Baker and S&T. A memorandum of that meeting was prepared by one of Baker's representatives. Its accuracy as a report of what happened is not disputed and it was admitted into evidence by the arbitrators without objection by PTC's able assistant general counsel who had attended the confer-

ence. It includes the following sentence: "It was recognized by all present that due to additional cost escalation and as a result of more recent cost estimates, the latest construction cost estimate presented by Sanders & Thomas and in turn by the Commission's Chief Engineer, is 29.3 million." At this conference, S&T offered to settle for a fee of 4.1% of 29.3 million, or $1,201,300, and the PTC countered by suggesting a lump sum payment of $1,170,000. S&T accepted PTC's counter-offer and it was agreed that other Commissioners of PTC would be consulted by telephone and that if they concurred the settlement would be formally approved by the Commission at a meeting to be held on July 20, 1971. For reasons undisclosed in the record, PTC did not finally approve this settlement.

S&T, nevertheless, completed its work and on January 5, 1972 submitted a final bill computed as 4.25% of a construction cost estimate of $29,301,468, producing a total fee of $1,245,312.39. PTC having made progress payments in the amount of $687,776.25, S&T's net billing was $557,536.14.

It is also important to note for the record that PTC agrees that its engineer calculated at some time the construction cost estimate at $26,734,322, and that an audit made by PTC of S&T's books and records revealed that its cost of performing the contract was $1,178,476.

Its bill remaining unpaid, S&T requested submission to arbitration pursuant to Article VII of the agreement. Each of the parties chose as its arbitrator an experienced and able member of the Bar, and the American Arbitration Association appointed a third arbitrator, apparently an engineer.

After a day and a half of hearings, the arbitrators by unanimous order awarded S&T the sum of $557,474, with interest at 6% computed from March 1, 1972, representing the balance due for engineer's fee at the rate

of 4.25% on estimated construction costs of $29,300,-000, producing a total fee of $1,245,250 less credit for payments on account of $687,776.

At the conclusion of the hearing, PTC's counsel stated to the arbitrators that the only things to be decided were the percentage of construction costs to which S&T was entitled and the amount of construction costs estimated by PTC's Chief Engineer. On these two issues S&T depended upon the admitted agreement of the parties on a fee of 4.25% at a time when the estimated construction costs were $14,600,000, and on the Chief Engineer's concurrence in July of 1971 in S&T's then estimate of $29,300,000. The PTC on the subject of percentage of fee relied upon an opinion of a Deputy Secretary of Transportation that a fair and adequate percentage would be 3.55% and on the Chief Engineer's estimate of construction costs of $26,734,-322. The arbitrators, based upon the record, which we have reviewed with great care, wholly reasonably concluded that the percentage should be 4.25% as last agreed upon by the parties and that the estimated cost to which that percentage should be applied was the $29,300,000 figure accepted by the Chief Engineer at the July 1971 meeting. At the conclusion of the hearing, counsel for the parties agreed that there would be no necessity for the filing of briefs and that the arbitrators should not be burdened with making detailed findings or conclusions. Although S&T's counsel in his closing statement to the Board requested interest from January 6, 1972, when S&T sent its final bill, or "perhaps a reasonable time thereafter for the bill to have been paid," PTC's trial counsel, in the presence of its General Counsel, made no argument on this point.

Despite the simplicity of the issues as presented to the arbitrators, special counsel for PTC for purposes of this appeal present for our consideration in support of their contention that the arbitrator's award should

be either vacated or modified, no less than seven questions, explained in 117 pages of brief. We have concluded that none of these contentions is meritorious, that the arbitrators had power to act, that their award is supported by substantial evidence and that they committed no error of law.

The proposition most vigorously pressed by PTC is that the arbitrators had no power to act and that their award was a nullity because the Act of 1927, P. L. 381, 5 P.S. §161 et seq., to which we will refer as the Arbitration Act of 1927, insofar as it provides for arbitration thereunder of disputes arising from contracts of the State or its instrumentalities, was repealed by implication by the Act of May 20, 1937, P. L. 728, 72 P.S. §4651-1 et seq., to which we will refer as the Arbitration of Claims Act of 1937. The argument commences with the indisputable principles founded in Article I, Section 11 of the Pennsylvania Constitution (1) that not only the Commonwealth but also its instrumentalities, such as PTC, are immune from suit except as the Legislature shall provide, citing *Rader v. Pennsylvania Turnpike Commission*, 407 Pa. 609, 182 A. 2d 199 (1962), and *Roney v. General State Authority*, 413 Pa. 218, 196 A. 2d 349 (1969), and (2) that the Arbitration of Claims Act of 1937 was the Legislature's consent to suit on claims arising from contracts entered into with the Commonwealth or its instrumentalities, including Authorities created by it, citing *Adam Eidemiller, Inc. v. State Highway and Bridge Authority*, 408 Pa. 195, 182 A. 2d 911 (1962), and *Armour Rentals, Inc. v. General State Authority*, 4 Pa. Commonwealth Ct. 517, 287 A. 2d 862 (1972). It does not follow from these as PTC argues, that the Arbitration of Claims Act of 1937 is the only means provided by the Legislature for persons contracting with the Commonwealth or its instrumentalities to pursue their claims, or that the Board of Arbitration of Claims cre-

ated by that Act was given exclusive jurisdiction of disputes arising out of Commonwealth contracts.

Section 1 of the Arbitration Act of 1927, 5 P.S. §161, makes "valid, irrevocable and enforceable" a provision to submit for arbitration controversies arising out of written contracts. Section 16, 5 P.S. §176, makes the provisions of the Act applicable to written contracts to which the Commonwealth and its agencies are parties. Even assuming that the submission of a dispute to arbitration is a suit against the Commonwealth within the contemplation of Article I, Section 11 of the Pennsylvania Constitution, it is too clear for sensible argument to the contrary that the Legislature intended that the state's immunity should not attach where it or its agencies have agreed to arbitration of disputes arising out of written contracts. The cases have held that the agreements of the Commonwealth and its agencies to submit disputes to arbitration under the Act of 1927 are, as the Act provides, valid and enforceable. *Pennsylvania Turnpike Commission v. Smith*, 350 Pa. 355, 39 A. 2d 139 (1944); *Acchione v. Commonwealth*, 347 Pa. 562, 32 A. 2d 764 (1943); *Seaboard Surety Co. v. Commonwealth*, 345 Pa. 147, 27 A. 2d 27 (1942). *See also Philadelphia Housing Authority v. Turner Construction Co.*, 343 Pa. 512, 23 A. 2d 426 (1942); *J. M. Davis Company v. Shaler Township*, 332 Pa. 134, 2 A. 2d 708 (1939). As the dates of these cases indicate, the Arbitration Act of 1927 has been consistently enforced with respect to public contracts since the passage of the Arbitration of Claims Act of 1937. Likewise, where applicable, the Arbitration of Claims Act of 1937 has been employed without question based upon the Arbitration Act of 1927. *Adam Eidemiller, Inc. v. State Highway and Bridge Authority, supra; Foley Bros., Inc. v. Commonwealth*, 400 Pa. 584, 163 A. 2d 80 (1960).

In short, the two Acts have coexisted since 1937 and each has been employed and enforced where appropriate. The law has developed to be: that the Arbitration Act of 1927 is to be followed where the public body and the persons with whom it contracts agree to refer controversies to arbitration generally (*J. A. Robbins Company, Inc. v. Airportels, Inc.,* 418 Pa. 257, 210 A. 2d 896 (1965)), or, as in this case, by specific reference to the Act of 1927; the Arbitration of Claims Act of 1937 is to be followed where the parties agree that claims shall be submitted thereunder, or, where the contract fails to provide other remedy for an aggrieved contractor. The two enactments reflect the Legislature's continuing interest in improving the Commonwealth's opportunity to obtain contracts upon favorable terms by diminishing the state's constitutional immunity from suits upon its engagements. By the Arbitration Act of 1927, it afforded claimants the right, by obtaining arbitration clauses, to determinations of their disputes under that Act. By the Arbitration of Claims Act of 1937, it granted all persons having claims arising from contracts entered into with the Commonwealth, not providing other means of settlement, the right to redress through the Board thereby created. The Acts provide separate remedies, the availability of each depending upon the contract from which the controversy has emanated.

In support of its contention that the Acts are irreconcilable and that for this reason the Arbitration of Claims Act of 1937 by implication repealed Section 16 of the Arbitration Act of 1927, PTC points only to the contrast between the six months limitation for filing claims provided by the Arbitration of Claims Act, 72 P.S. §4651-6, and case law holding that arbitration under the Arbitration Act of 1927 may be pursued when the agreement of the parties provides or during the life of the contract. *Emmaus Municipal Authority v. Eltz,*

416 Pa. 123, 204 A. 2d 926 (1964). There is a presumption against the repeal of any statute by implication. *In re: Jennerstown Borough,* 423 Pa. 609, 225 A. 2d 247 (1966). A later statute may not be construed to repeal an earlier statute unless the two statutes are irreconcilable. Statutory Construction Act of 1972, 1 Pa. S. §1971(c). As we have pointed out, not only do the two statutes apply in different circumstances, they have existed together without embarrassment for more than 30 years. That the time for asserting a claim provided by the Arbitration of Claims Act of 1937 is different from that developed in the cases for the Arbitration Act of 1927, is neither new nor strange in the law. The Bar lived for decades with a three month limitation for appeals from judgments in the common pleas and a 45-day limitation in the case of appeals from sentences in quarter sessions without awareness of repugnance or suggestion that the law required reconciliation.

PTC next argues that the arbitrators lacked power because S&T's agreement to design interchanges was one for personal services, excepted from application of the Arbitration Act of 1927 by Section 1, 5 P.S. §161. S&T in the performance of the contract here in suit was not PTC's servant but an independent contractor performing, in whatever manner it chose proper, its engagement to produce engineering plans required by the contract. S&T's independence is emphasized by the fact that another engineer was interposed as PTC's consultant. Section 1's reference to personal service was not intended to exclude from the availability of the Act the kind of contract here involved but, in the words of Judge, later Justice, BOK, "requires the idea of master and servant." *Couzens v. Wachtel,* 64 Pa. D. & C. 459, 462 (1948). *Amalgamated Association of Street, Electric Railway and Motor Coach Employes v. Pittsburgh Railways Company,* 393 Pa. 219, 142 A. 2d

734 (1958) holds that a collective bargaining agreement may subject the parties to arbitration under the Arbitration Act of 1927, Justice ARNOLD writing: "The 'personal services' exclusion can only be taken to apply to the employe's own contract of employment; . . ." 393 Pa. at 224, 142 A. 2d at 736. S&T was no employe of PTC, nor was it performing personal services. Further, on this subject, the appellee persuasively argues that Section 16 of the Act of 1927, rendering the Act applicable to *"any* written contract" to which the Commonwealth shall be a party expresses an intention that the exception should not attend public contracts. In any event, we are unwilling to overturn 35 years of unquestioned use of the Arbitration Act of 1927 in exactly this kind of case upon so slender a pretext.

The PTC's remaining arguments for setting aside the award are that S&T failed to prove that its contract with PTC had been approved by the Department of Highways as required by Section 4 of the Act of May 21, 1937, P. L. 747, 36 P.S. §652(d) or to prove that the PTC's Chief Engineer properly or in fact made a final cost estimate. Neither has the slighest merit, the first because the law presumes, in the absence of evidence to the contrary, that the officers of PTC who executed the contract complied with *their* obligations under the law and the second, because the contract prescribed no particular form for the Chief Engineer's estimate and because there was ample evidence to support the arbitrators' finding that the Chief Engineer accepted S&T's figure of $29,300,000.

PTC also presents for our consideration a number of reasons why we should modify the arbitrators' award, none of which were raised before the arbitrators and are therefore not subject to our review. *Lang v. Public Utility Commission,* 207 Pa. Superior Ct. 312, 217 A. 2d 750 (1966). We will, nevertheless, comment on them briefly:

Complaint is made that the arbitrators should not have admitted into evidence or considered the memorandum of a settlement conference offered by S&T for the purpose of proving that the Chief Engineer had made a cost estimate of $29,300,000. The offer of this document into evidence was without objection on the part of PTC. It was relevant and it was not misleading. *Moidel v. Peoples Natural Gas Company,* 397 Pa. 212, 154 A. 2d 399 (1959), relied on by PTC on this issue, holds only that the admission without objection in a jury trial of incompetent and *misleading* evidence warrants a new trial.

PTC further argues that we should conclude that S&T breached its agreement because the design cost as finally estimated greatly exceeded PTC's early estimates. There is nothing in the record demonstrating that S&T designed something other than that required by PTC, or its coordinator, the Baker Company. On the contrary, PTC proved that PTC's Chief Engineer at one time estimated the cost at a figure in excess of $26,700,000 without indication that S&T was exceeding its duties under the contract.

PTC contends that the arbitrators erred in granting interest on the award from a date several months after the job was completed and demand made. At the trial PTC's able counsel raised no question as to the propriety of his adversary's claim for interest from the date of demand. It is now settled that the Pennsylvania Turnpike Commission and other similar public bodies are not alter egos of the Commonwealth for the purpose of determining liability for interest upon amounts owed persons with whom they do business. *Lichtenstein v. Pennsylvania Turnpike Commission,* 398 Pa. 415, 158 A. 2d 461 (1960). They are liable for interest as other litigants. *Ben Construction Company v. Duquesne Sanitary Authority,* 424 Pa. 40, 225 A. 2d 886 (1967), although holding that in the circumstances

there present interest should not have been awarded, plainly implies that if there had been a wrongful delay, interest would have been payable. *See also Commonwealth v. Henry A. & Samuel A. Berger,* 11 Pa. Commonwealth Ct. 332, 312 A. 2d 100 (1973).

PTC finally contends that the award is not supported by the record. The contract in question provided that S&T would be paid a fee equal to a percentage of construction costs estimated by PTC's Chief Engineer. S&T produced credible evidence that PTC's Chief Engineer concurred in an estimate of $29,300,000 made by S&T. The 4.25% applied to this estimate was a revised rate agreed to by the parties, lower rates subsequently offered by S&T in an effort to settle the claim having been rejected by the appellant. While $557,474 is a large sum of money, it produced a total fee for S&T of $1,245,250, a sum only $75,000 more than PTC's staff was willing to pay and S&T to accept in July of 1971 and only $67,000 more than S&T's cost for doing the work as determined by PTC's auditors.

## ORDER

AND NOW, this 11th day of March, 1974, the arbitrators' award is affirmed and judgment is entered in favor of Sanders & Thomas, Inc. and against the Pennsylvania Turnpike Commission in the amount of $557,-474 with interest at the rate of six percent (6%) per annum from March 1, 1972.

---

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. One reviewing the actions of the Pennsylvania Turnpike Commission in this case would find it difficult to reach a result contrary to that reached by the majority here. However, I reluctantly do so, because I am of the opinion that the appellee's *only recourse* was to proceed under the provisions of the Act of May 20, 1937, P. L. 728 (Act),

72 P.S. §4651-1 et seq., and present its claim to the Board of Arbitration of Claims.

Section 4 of this Act, as amended, 72 P.S. §4651-4, provides: "The Board of Arbitration shall have jurisdiction to hear and determine *all claims* against the Commonwealth *arising from contracts hereafter entered into* with the Commonwealth where the amount in controversy amounts to $300.00 or more." (Emphasis supplied.)

Recently our Supreme Court in *Commonwealth v. Orsatti, Inc.,* 448 Pa. 72, 76-77, 292 A. 2d 313, 315-16 (1972), stated: "The Commonwealth of Pennsylvania is a sovereign state, and as such is immune from suit unless it gives its consent. Conrad v. Commonwealth, 441 Pa. 530, 272 A. 2d 470 (1971). Article I, Section 11 of the Pennsylvania Constitution empowers the Legislature to give the consent of the Commonwealth to suit by providing: 'Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.' The Legislature exercised this power by its enactment of the Act of May 20, 1937, P. L. 728, 72 P.S. §4651-1 et seq., which established the Board of Arbitration of Claims with: '. . . jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300.00 or more.' 72 P.S. §4651-4. *The jurisdiction conferred therein was exclusive.* See Kaufman v. Holcomb, 357 Pa. 514, 55 A. 2d 534 (1947). Since the Commonwealth, as a sovereign, can only be sued by its consent, and since *its consent for contractual suits has been conditioned on the claimant's use of the Board of Arbitration of Claims,* Orsatti may only establish the full counterclaim before the Board of Arbitration of Claims." (Emphasis supplied.)

More recently we reasoned likewise in *Alger-Rau & Associates, Inc. v. General State Authority,* 7 Pa. Commonwealth Ct. 71, 298 A. 2d 916 (1973), and *Kreider v. Pennsylvania Human Relations Commission,* 9 Pa. Commonwealth Ct. 491, 308 A. 2d 642 (1973).

Since appellee failed to follow the provisions of the applicable act, including compliance with the time limits established by the Legislature in its conditional granting of consent to be sued (Section 6 of the Act, 72 P.S. §4651-6), I would grant the Commission's petition to vacate the arbitration award.