The Pennsylvania Turnpike Commission, Petitioner, *v.* Litton RCS, Inc., now as legal successor Litton Business Systems, Inc., successor by merger, Repondent.

Litton RCS, Inc., now as legal successor Litton Business Systems, Inc., successor by merger, Petitioner, *v.* Pennsylvania Turnpike Commission, Respondent.

Argued June 3, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Kenneth M. Cushman,* with him *Peter Marvin, Bruce W. Ficken,* and, of counsel, *Pepper, Hamilton & Scheetz* and *John R. Rezzolla,* for Pennsylvania Turnpike Commission.

*Bruce W. Kauffman,* with him *Robert W. Maris,* and *Dilworth, Paxson, Kalish & Levy,* for Litton RCS, Inc.

OPINION BY JUDGE ROGERS, July 31, 1975:

We have consolidated for argument and disposition the petition of Litton RCS, Inc. (Litton)[1] to confirm an arbitrator's award[2] in its favor in a contract dispute with The Pennsylvania Turnpike Commission (Commission) and the petition of the Commission to vacate, or in the alternative to modify or correct, said award.[3]

The Commission desiring to improve and modernize its toll collection facilities, consulted Taller & Cooper, Inc. (T&C), a leader in the field of developing and

---

1. Litton RCS, Inc. succeeded by a corporate reorganization to the interest of Taller & Cooper, Inc. during the term of the contract out of which this litigation arose. It further appears that the interest of Litton RCS, Inc. is now in Litton Business Systems, Inc., the surviving corporation of a merger.

2. Act of April 25, 1927, P.L. 381, §9, 5 P.S. §169.

3. Act of April 25, 1927, P.L. 381, §§10, 11, 5 P.S. §§170, 171.

producing such equipment. On August 10, 1967, the Commission and T&C entered into a research and development contract. T&C agreed to devote its best efforts to the production of a prototype weight classification system of toll collection and the Commission agreed to pay for these services by reimbursing T&C's costs and by paying a fixed fee of $20,000. T&C estimated that the total cost of the project, including its fee, would be $148,000 and promised to use its best efforts to do the work for this amount. The contract further provided: (1) that the prototype would be the property of the Commission; (2) that the Commission would have available to it all parts or components and all rights necessary for the complete manufacture and production of the toll collection equipment to be developed; (3) that T&C would report its progress to the Commission at intervals to be agreed upon by the parties; and (4) that any disputes arising out of the contract would be submitted to arbitration by the American Arbitration Association. T&C additionally agreed that it would perform some of the work under the contract within six months and complete the balance within 18 months.

Finally, the agreement reserved in the Commission the right to terminate the contract:

"at any time upon thirty days prior written notice, in which event the fixed fee shall be paid in the same proportion as the total cost paid or to be paid to [T&C] bears to the estimated cost of performance as herein provided [; i]n the event of such termination, [T&C] shall be paid all costs of the work incurred to the date of termination."

T&C began work on August 11, 1967. During the whole period of T&C's work, a consulting engineer, R. L. Budnik, specially engaged by and acting for the Commission, monitored, collaborated in and assisted with the work, and reported to the Commission.

In April 1968, T&C billed the Commission for costs incurred through March 31, 1968 in an amount in excess

of $74,500, and estimated that the cost of completion would be in the amount of about $53,500. The Commission met this billing.

On February 21, 1969, Litton, which had with the knowledge and acquiescence of the Commission succeeded T&C, advised the Commission that costs would exceed the original estimate and requested a formal extension of time for completion. By a letter dated March 6, 1969, the Commission terminated the contract effective April 6, 1969. No reason was given for the termination. Litton then billed the Commission for its costs incurred to the termination date and its fixed fee. Despite the formal notice of termination Litton continued to work on the project after April 6, 1969, and Mr. Budnik continued to consult with Litton and advise the Commission of the progress of the work. Litton completed a prototype in November 1971.

Litton has never billed the Commission nor sought reimbursement of any costs incurred after April 6, 1969.

Litton did seek reimbursement of costs incurred until April 6, 1969 and payment of its fixed fee and filed claim for and by unanimous decision of arbitrators was awarded this amount, $228,897.54.

The Commission refused to pay the amount awarded and Litton filed in the United States District Court for the Eastern District of Pennsylvania a motion to confirm the award pursuant to the United States Arbitration Act, 9 U.S.C. §9 (1970). That court dismissed the petition on the grounds that the parties, having adopted the provisions of the Pennsylvania Act of April 25, 1927, P.L. 381, *as amended,* 5 P.S. §161 et seq. were required to pursue their post-arbitration remedies in the state courts. *Litton RCS, Inc. v. Pennsylvania Turnpike Commission,* 376 F. Supp. 579 (E.D. Pa. 1974), *aff'd,* 511 F.2d 1394 (3d Cir. 1975). The matter of Litton's petition to confirm the award filed in the Commonwealth Court which had been continued pending completion of the Federal action

was then listed by us for argument. The Commission filed its counter-petition to vacate, or to modify or correct, the award pursuant to Sections 10 and 11 of the Act of 1927, 5 P.S. §§170, 171.

Litton, of course, contends that the arbitrators' award was proper under the law and the facts developed at the arbitrators' hearings and the Commission by its counsel specially engaged to pursue the proceedings in this court argues to the contrary.

Section 10 of the Act of 1927, 5 P.S. §170 sets forth the grounds upon which an order to vacate may be founded:

"In either of the following cases the court shall make an order vacating the award upon the application of any party to the arbitration:

"(a) Where the award was procured by corruption, fraud, or undue means.

"(b) Where there was evident partiality or corruption on the part of the arbitrators, or any of them.

"(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or any other misbehavior by which the rights of any party have been prejudiced.

"(d) Where the arbitrators exceeded their powers or so imperfectly executed them that a final and definite award upon the subject matter submitted was not made.

"Where an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators."

It seems that the Commission in respect to its application to vacate the award, pursuant to Section 10 of the Act of 1927, placed principal reliance on the grounds advanced and rejected either by this court or the Supreme

Court of Pennsylvania in *Pennsylvania Turnpike Commission v. Sanders & Thomas, Inc.,* Pa. , 336 A.2d 609 (1975), *aff'g,* 12 Pa. Commonwealth Ct. 145, 316 A.2d 127 (1974).[4] These issues require no discussion here.

The Commission additionally, in apparent reliance on Section 10 (c), argues that the admission into the record of evidence of work performed by Litton after April 6, 1969, amounted to misconduct by the arbitrators which prejudiced the rights of the Commission at the hearing. Trial counsel for the Commission appears to have objected to the introduction of this evidence on the incorrect assumption that it was offered in proof of a claim for termination costs incurred by Litton. A close reading of the transcript convinces us that the arbitrators admitted this evidence for the limited purpose of showing that there was some relationship between Litton and the Commission after April 6, 1969. Upon the admission being so limited trial counsel for the Commission stated: "Insofar as to show a relationship or some relationship existed, *I withdraw my objection.*" (Emphasis supplied.) *See Pennsylvania Turnpike Commission v. Sanders & Thomas, Inc.,* 12 Pa. Commonwealth Ct. 145, 156, 316 A.2d 127, 134 (1974), *aff'd,* Pa. , 336 A.2d 609 (1975).

Finally, the Commission cites numerous instances of alleged breaches of contract by Litton which, it argues, preclude Litton's recovery and support either vacation of the award under Section 10 or at least modification or correction of the award under Section 11, 5 P.S. §171. Because an error of law by the arbitrators as to what constitutes a breach under the contract or as to any other matter of law is not a valid ground for vacating an award under Section 10, the Commission may have relief

---

4. *See also Litton RCS, Inc. v. Pennsylvania Turnpike Commission,* 376 F.Supp. 579 (E.D. Pa. 1974), *aff'd,* 511 F.2d 1394 (3d Cir. 1975).

only by way of modification or correction under Section 11(d). Section 11 provides as follows:

"In either of the following cases the court shall make an order modifying or correcting the award upon the application of any party to the arbitration:

"(a) Where there was an evident material miscalculation of figures, or an evident material mistake in the description of any person, thing, or property referred to in the award.

"(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted.

"(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

"(d) Where the award is against the law, and is such that had it been a verdict of the jury the court would have entered different or other judgment notwithstanding the verdict.

"The court may modify and correct the award or resubmit the matter to the arbitrators."

Section 11(d) indicates the scope of our review. While we may modify or correct the award for errors of law by the arbitrators, we may not disturb their findings unless they are against the clear weight of the evidence. *See Framlau Corporation v. Upper Dublin School Authority Board,* 219 Pa. Superior Ct. 369, 281 A.2d 464 (1971). Review of factual determinations of the arbitrators on a petition to modify or correct an award as though on a motion for judgment n.o.v. requires us to view the facts in the light most favorable to the party which prevailed before the arbitrators and to draw inferences favorable to that party's cause. *See, e.g, Pennsylvania Turnpike Commission v. Smith,* 350 Pa. 355, 39 A.2d 139 (1944); *Hostetler v. Kniseley,* 322 Pa. 248, 249-250, 185 A. 300, 301 (1936).

The Commission points to five alleged lapses by Litton in the performance of its contractural duties and argues

that each was a breach of contract: (1) the failure to complete its initial obligation within six months as provided in the contract or within a reasonable time thereafter; (2) the submission of inaccurate or incomplete progress reports and billings; (3) the failure to inform the Commission of cost overruns of which Litton knew or should have known; (4) the failure to supply the Commission with monthly invoices and estimates; and (5) the failure to tender the prototype and/or all necessary parts and components thereof prior to demand for final payment.

Of course, we should not review those questions or issues not raised below. *Pennsylvania Turnpike Commission v. Sanders & Thomas, Inc., supra,* 12 Pa. Commonwealth Ct. at 155, 316 A.2d at 134; *Lang v. Public Utility Commission,* 207 Pa. Superior Ct. 312, 217 A.2d 750 (1966).[5] The fifth alleged breach—that concerning Litton's alleged failure to tender the prototype—was not raised with the arbitrators. We will nevertheless comment on the subject briefly. By the agreement, title to the prototype and access to its parts and components was and remained in the Commission. Thus, it was not Litton's duty to tender these items as a condition precedent to recovery of its costs, as the Commission contends, but rather it was for the Commission to "call in" the items if it desired to have them. There is no evidence that the Commission asked for these materials or that Litton failed to deliver them on demand.

We are satisfied that the remaining alleged breaches were raised below and our next inquiry is whether the contract imposed on Litton, as a matter of law, those duties which the Commission alleges Litton breached. We cannot find, as a matter of law, that the contract imposed

---

5. *See Daniel v. Sochacky,* 20 Pa. Commonwealth Ct. 217, 341 A.2d 589 (1975) ; *Paxon Maymer, Inc. v. Commonwealth,* 11 Pa. Commonwealth Ct. 136, 140-141, 312 A.2d 115, 117 (1973).

the duty on Litton to supply the Commission with monthly billings and continual cost status assessments as the Commission contends. The initial cost figure was understood to be an estimate. Monthly billings and cost assessments were suggested only in a letter from J. R. Cabocchi, Comptroller of the Commission, to T&C on August 25, 1967. The record reveals no agreement by T&C, or its successor Litton, to this suggestion. In fact, the Commission received only two billings from the commencement of work in August, 1967 until March, 1968 and paid them without complaint.

Similarly, at no time during the course of the contract, even though its representative, Mr. Budnik, kept it fully and constantly informed, did the Commission complain of or allege harm as the result of assertedly inaccurate progress reports or billings or lack of information as to costs. While the agreement provided that Litton would advise the Commission of its progress every six months, the manner in which this was to be done is not described in the contract. The frequent meetings with Mr. Budnik and other Commission representatives surely adequately fulfilled this obligation. Again the Commission voiced no contemporaneous objection to the adequacy of the information it received concerning the progress of the work. Even if these asserted failures to communicate should be viewed as breaches of the contract, they would be of no utility to the Commission's case unless material. Their materiality was a question of fact[6] which was resolved against the Commission by the arbitrators. We find this resolution to be entirely consistent with the evidence.

The Commission's charge that Litton's failure to complete its work within six months or within a reasonable time was a breach of contract is equally unpersuasive. The record clearly demonstrates that the parties did not intend time to be of the essence.

---

6. *See, e.g., Cole v. Philadelphia Co.*, 345 Pa. 315, 26 A.2d 920 (1942).

Finally, if we were to assume that Litton had breached its contractual duties in the manner charged and that such breaches were material, the Commission's argument still must fail because its actions during the term of the contract constituted a plain election to waive its right to discharge its obligation to pay. *Gray v. Maryland Credit Finance Corporation,* 148 Pa. Superior Ct. 71, 25 A.2d 104 (1942); Restatement of Contracts, §§309, 310 (1932).[7] The Commission never charged Litton with specific breaches of contract and it was not until March 6, 1969 that the Commission exercised its unrestricted right to terminate the contract. As correctly suggested by counsel for Litton, the Commission, upon discovery of any breach by Litton, could have notified Litton of its discovery and submitted the matter to arbitration; or, as we have mentioned, at any time, upon the occurrence of a breach or as a result of any dissatisfaction whatsoever, it simply could have terminated the contract. It exercised neither of these options during the period in which it alleges all the breaches occurred and, under the plain language of the agreement, it is required to pay Litton its costs incurred until the termination date, plus its fee.

## ORDER

AND NOW, this 31st day of July, 1975, it is ordered that the petition of the Pennsylvania Turnpike Commission to vacate, or to modify or correct the arbitrators' award, be and it is hereby dismissed; and that the prayer of the petition of Litton RCS, Inc. to confirm the arbitrators' award be and it is hereby granted; judgment is entered in favor of Litton RCS, Inc. in the sum of $228,897.54 with interest at a rate of six per cent (6%) per annum from July 20, 1973.

---

7. *See also J. Calamari and J. Perillo,* Contracts, §169 at 273 (1970).