535 A.2d 220

Commonwealth of Pennsylvania, Petitioner *v.* State Schools and Hospitals Federation of Teachers, Local 1830, Pennsylvania Federation of Teachers, AFT, AFL-CIO, by John D'Eletto, Trustee ad Litem, Respondent.

Consideration given by Judges CRAIG and COLINS, and Senior Judge BLATT.

*Steven O. Newhouse,* Assistant Counsel, with him, *John D. Raup,* Chief Counsel, for petitioner.

*Sandra R. Kushner,* with her, *Louis B. Kushner, Rothman, Gordon, Foreman and Groudine, P.A.,* for respondent.

OPINION BY JUDGE CRAIG, December 17, 1987:

State Schools and Hospitals Federation of Teachers, Local 1830, (Union) has filed an application to enforce a final appellate order in this case pursuant to Pa. R. A. P. 2591(b), which provides:

(b) **Enforcement of appellate court orders.**

At any time, upon its own motion or upon application, an appellate court may issue any appropriate order requiring obedience to or otherwise enforcing its judgment or other order.

Consistent with that rule is 42 Pa. C. S. §562 which empowers the Commonwealth Court "to issue . . . every lawful writ and process necessary or suitable . . . for the enforcement of any order which it may make. . . ."

The union's application requests that this court enforce against the Commonwealth that which the union considers to be the full import of our final order and judgment in *Commonwealth v. State Schools and Hospitals Federation of Teachers,* 88 Pa. Commonwealth Ct. 57, 488 A.2d 404 (1985). The application thus poses this question:

Where a labor arbitrator's decisions, directing that improperly furloughed state employees 'be made whole for all pay and benefits lost on account of such improper terminations,' have been affirmed on appeal, should the appellate court enforce that affirmance by requiring that a subgroup of such employees whose state institution has been closed, after the improper furloughs but before issuance of the arbitrator's decisions, receive backpay and benefits on the same basis as those employees whose institutions were not closed after the furloughs?

In *Raum v. Tredyffrin Township Board of Supervisors,* 29 Pa. Commonwealth Ct. 9, 370 A.2d 777 (1977),

this court exercised its power to enforce its decisions, by making findings of fact concerning the matter of compliance with its judgment and other pertinent events, in order to decide the enforcement application. In this case, because of the thorough and professional pleading contained in the union's application, the Commonwealth's answer thereto and new matter, and the union's reply to new matter, there are admissions as to averments of fact sufficient to constitute a virtual stipulation on all relevant points, so that deciding this matter pursuant to motion for judgment on the pleadings is entirely appropriate. From the averments, as admitted, this court makes the following findings of fact.

## Findings of Fact

1. Respondent, Commonwealth of Pennsylvania, Department of Public Welfare (DPW), the petitioner which initiated the above captioned appeal, is a state-wide administrative agency of the Commonwealth of Pennsylvania. (Application and Answer, para. 3.)

2. In 1979, DPW transferred the educational responsibility for mentally handicapped persons to the Department of Education; in conjunction with the transfer, DPW furloughed certain employees who had been providing those educational services. The union grieved the furloughing of these employees, and, failing to resolve the issues surrounding those furloughs, the parties submitted the case to arbitration. (Application and Answer, para. 4.)

3. The arbitrator's disposition ordered that each of the furloughed employees be "made whole" for all backpay and benefits lost on account of improper termi-nations. There was no language of exception or limita-tion in regard to any furloughees either in the award of the arbitrator dated 2/19/81, the disposition of the arbi-

trator dated 6/6/84, or the final order of affirmance by this court, dated March 1, 1985. (Application and Answer, para. 7.)

4. Because the Commonwealth did not further appeal the order dated March 1, 1985, it is the final judicial determination in this matter. (Application and Answer, para. 6.)

5. A memorandum of agreement between DPW and the union provide that "[a]ll furloughed employees, *fifty three in number* . . . (emphasis added) be made whole for all pay, miscellaneous economic entitlements, and benefits lost. . . ." and, although the tentative agreement of January 28, 1986 provided that such damages were to be paid "from the time of furlough until the execution of this agreement. . . .", section IB of the final agreement signed by the parties provides for payment "until the date such are paid by the Commonwealth." (Application and Answer, para. 9.)

6. Subsequently, DPW sent Lillian Mason, Ronald M. Fultz, Sr. and Helen Trent, furloughees and members of the bargaining unit, letters of reinstatement, which stated that, whether or not they returned to employment with the Commonwealth, they would be paid their salaries and economic entitlements "for the period beginning with the date of furlough up to and including March 26, 1986. . . ." (Application and Answer, para. 10.)

7. Thereafter, on or about March 25, 1985, DPW sent another letter to the same persons in regard to the processing of backpay and benefits. Although that letter indicates that, in the absence of the documentation requested, the Commonwealth would be unable to process any payments to which the furloughees were entitled, there is no language of exception or limitation which would indicate any intention to treat any of the

furloughees in a different manner. (Application and Answer, para. 11.)

8. On April 3, 1986, representatives of the Commonwealth and of the furloughees attended a joint meeting, one of the purposes of which was to notify the furloughees of the cutoff date (May 15, 1986) for the submission of documentation regarding alternate earnings and expenditures during the period of furlough. (Application and Answer, para. 13.)

9. At no time during that meeting was there any indication by any representative of the Commonwealth of any intention to treat any of the furloughees differently. (Application and Answer, para. 14.)

10. On or about June 6, 1986, the Commonwealth notified counsel for Lillian Mason, the late Josephine Smith, Ronald M. Fultz, Sr. and Helen A. Trent—all furloughed from the Eastern Pennsylvania Psychiatric Institute (EPPI)—that Lillian Mason's reimbursement for costs incurred during the period of her furlough as those costs might relate to life, health and medical insurance premiums would be made only through January 9, 1981, the "date EPPI was closed. . . ." (Application and Answer, para. 16.)

11. On or about June 10, 1986, representatives of the Commonwealth notified counsel for the four above-named EPPI furloughees that Ronald Fultz, Sr. would only be so reimbursed through January 9, 1981, "the date 'EPPI' was closed. . . ." (Application and Answer, para. 17.)

12. On or about June 1, 1986, and October 29, 1986, counsel for the four EPPI furloughees received similar notices with regard to Josephine Smith and Helen Trent. (Application and Answer, para. 18.)

13. On or about September 12, 1986, the Commonwealth sent to Lillian Mason and Ronald Fultz, Sr. checks or payroll vouchers covering "payment of retro-

active monies in the McDaniel Arbitration Award." Summarization schedules, attached to support the amounts shown, indicate that the Commonwealth's position on the closing of "EPPI" is that the four were "re-furloughed 01/09/81." The Commonwealth's sale of EPPI to the Pennsylvania Medical College for Women occurred one month before the original arbitrator's decision was handed down in January of 1981. (Application and Answer, para. 19.)

14.  Notwithstanding, the Commonwealth paid Josephine Smith's widower, Alfred T. Smith, group life insurance benefits of $20,000, as though she had been covered under said policy at the time of her death on February 16, 1986. (Application and Answer, para. 20.)

15.  On October 8, 1986, the Commonwealth notified counsel for the affected furloughees that, because payment had been made in error, no reimbursement would be made for prior medical claims submitted on behalf of Josephine Smith. The Commonwealth did not, however, request return of such payments. (Application and Answer, para. 21.)

Further, from the new matter pleaded by the Commonwealth, it is also found:

16.  The Commonwealth is a public employer and the union is an employee organization as both terms are defined in section 301 of the Act of July 23, 1970, P.L. 563, 43 P.S. §1101.301, the Public Employee Relations Act (PERA).

17.  The union is the exclusive representative of the bargaining unit of which the employees in question were members.

18.  A letter of March 10, 1986 from a union attorney to a Commonwealth attorney stated in pertinent part:

It should be clearly understood that it has been and continues to be the Union position that, an

attempt would be made to negotiate an accommodating agreement which would permit some digression from the strict remedies of the Arbitrator, and that failing to reach such an agreement, the Commonwealth would remain obligated to implement the remedies of the Award as written.

The latest draft is unacceptable. We offer to meet with you in my office in Pittsburgh in a further attempt to resolve this matter in a spirit of cooperation.

Virtually all of the remaining pleadings on both sides consituted, and were denied as, conclusions of law, which will be treated in this opinion as legal positions advanced by the respective parties.

### Issue Presented

Where an arbitrator's 1984 decision, referring to furloughs in 1979, provides that "*all* bargaining employees 'furloughed' . . . be made whole for all pay and benefits" (emphasis added), and this court in 1985 affirms that award and disposition, may the Commonwealth thereafter commence not earlier than 1986 to treat four of the bargaining unit employees differently by newly claiming that those four are entitled to be "made whole" only up to January 9, 1981, when the institution at which they worked was closed?

This court recognizes, as do the parties, that the only role of this proceeding is to enforce this court's affirmance of the arbitrator's disposition. We are not involved in rewriting or reading new meanings into that award. Nor is this court directly involved in construing or enforcing agreements made and correspondence exchanged by the parties as they sought to proceed with implementation of the award. On the other hand, those agreements and correspondence constitute pertinent

evidence helpful to understanding the history of the matter, even if their contractual force is not germane to enforcement of this court's judgment on appeal.

## Discussion

The key point is that the arbitrator's award of 1981 and disposition of 1984 sustained the grievance as presented and directed that all bargaining unit employees be made whole, without making any exception whatsoever for any subgroup of employees whose workplace may have been closed after the time of their terminations, which were subsequently adjudicated by the arbitrator to be improper.

As the pleadings and findings establish, the Commonwealth closed the Eastern Pennsylvania Psychiatric Institution (EPPI) on January 9, 1981, *before* the arbitrator issued his initial award in February of 1981 and long before he issued his final dispostion in 1984. At no time during the arbitration proceedings or during this court's review process in 1985 did the Commonwealth bring up any theory that former EPPI employees furloughed in 1979 should be treated differently after January of 1981.

At all times, the grievance, which the arbitrator fully sustained, embraced only one class of grievants, with no subset identified or claimed by the Commonwealth.

Plainly the Commonwealth's attempt to carve out a subclass, expressed for the first time after the arbitration proceedings and review in this court was concluded, came as an afterthought.

No party can resort to hindsight to restructure appellate affirmance of an arbitrator's award.

The Pennsylvania Supreme Court has reiterated its position that matters not raised below cannot be invoked on appeal. *Williams v. National Organization, Master, Mates & Pilots of America,* 384 Pa. 413, 120

A.2d 896 (1956). This court also had refused to review issues not raised before an arbitrator and has refused to modify an arbitration award on points not raised during the arbitration proceeding itself. *Pennsylvania Turnpike Commission v. Litton RCS, Inc.*, 20 Pa. Commonwealth Ct. 577, 342 A.2d 108 (1975); *Pennsylvania Turnpike Commission v. Sanders & Thomas, Inc.*, 12 Pa. Commonwealth Ct. 145, 316 A.2d 127 (1974), *aff'd* 461 Pa. 420, 336 A.2d 609 (1975).

Because an appellate court will not consider issues not raised before the tribunal below—and thence waived—the point follows even more forcefully that this court will not consider a new claim which the Commonwealth has articulated for the first time after this court's appellate decision was filed. The Commonwealth's understanding of this court's affirmance order, as recognizing no exceptions within the grievant group, has been repeatedly evidenced by the Commonwealth's explicit treatment of the EPPI employees no differently from the others. The memorandum of agreement executed by the Commonwealth provides additional evidence that all "fifty-three" grievants—which number included the EPPI employees—were perceived as a single group. Indeed section B5, relating to reinstatement options, embraced "employees who were furloughed from work sites which had been closed," and thereby reflected an understanding that our unappealed affirmance was just as applicable to those employees as to the entire class of grievants.

Enforcement under the Rules of Appellate Procedure will be granted.

## ORDER

Now, December 17, 1987, pursuant to Pa. R.A.P. 2951(b), it is ORDERED that petitioner Commonwealth of Pennsylvania shall implement this court's

affirmance of arbitrator's disposition with respect to Lillian Mason, Josephine Smith, Deceased, by Alfred T. Smith, Ronald M. Fultz, Sr. and Helen A. Trent in manner, content and entitlement no differently from the treatment accorded and relief granted to other grievants covered by the grievances sustained, and particularly without subjecting the benefit entitlements of those named grievants to any cutoff date related to the closing of the Eastern Pennsylvania Psychiatric Institute, so that the Commonwealth shall make payment for backpay and benefits to the date of death of Josephine E. Smith, and to the date of payment as to the other grievants named in this case. Compliance with this enforcement order within sixty (60) days after its docketing is mandated.