Acchione, Appellant, *v.* Commonwealth.

Argued May 26, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*Walter Biddle Saul,* of *Saul, Ewing, Remick. & Harrison,* with him *John Y. Scott,* for appellant.

*George W. Keitel,* with him *Phil H. Lewis,* Deputy Attorneys General, and *James H. Duff,* Attorney General, for appellee.

OPINION BY MR. JUSTICE PATTERSON, June 30, 1943:

This was a proceeding under the Act of April 25, 1927, P.L. 381, to modify an arbitration award.

John B. Acchione, trading as Acchione Contracting Company, was awarded two highway construction contracts for the Commonwealth of Pennsylvania. The first contract, executed December, 1933, had to do with Section 8 of State Highway Route No. 153, and the second, executed September, 1934, with Section 10 of the same highway. The work under the Section 8 contract required eleven months and was completed and accepted on November 20, 1934. The Commonwealth was anxious to have the Section 10 contract completed quickly, and after the bid was accepted it asked the contractor to complete the work on or before November 25, 1934, which the contractor agreed to do. At a conference prior to the signing of the Section 10 contract, the contractor indicated that the presence of facilities of certain utilities might cause delay. The Commonwealth agreed to assist the contractor in obtaining removal of these facilities. The site on Section 10 was not cleared until two months after work had begun, and the contract was not completed until May 24, 1935. The appellant contends that the delay in the completion of the contracts, due to the presence of the facilities of the utilities, caused him to suffer a loss of $5,046.80 on Section 8 and $20,847.11 on Section 10.

The contracts provided, inter alia, that : (1) (section 4) "The bidder is required to examine carefully the site of and the proposal, plans, specifications and contract form for the work contemplated, and it will be assumed that he has judged for and satisfied himself as to the conditions to be encountered . . ."; (2) (section 40) "The contractor's attention is drawn to county

bridges and certain other work which it may be necessary to construct, which are not under the supervision of this Department. He shall investigate such matters fully and satisfy himself as to the performance of such work so he can anticipate its execution and shall not make claim or hold the Department liable for his failure satisfactorily to anticipate the performance of the work . . ."; (3) (section 101) "The contractor shall keep in touch with all public service companies, individuals, and others owning or controlling any structures or tracks within the limits of the highway which may have to be removed, reset or reconstructed and shall give due notice in advance to the responsible party of the work required and time it should be completed . . ."; and (4) "All questions or disputes arising between the parties . . . shall be referred to the Secretary of Highways and the Attorney General . . . whose decision and award shall be final, binding, and conclusive upon all parties without exception or appeal; and all rights or rights of any action . . . are hereby expressly waived."

The contractor contended that the Commonwealth was obligated to deliver the site of the work free of obstacles which would interfere with the performance of the contracts and that its failure to do so constituted a breach of contract entitling him to damages in the amount of $25,893.91. The Commonwealth took the position that the contracts placed the duty of securing the removal of all obstacles and utility facilities on the contractor, or, in the alternative, that the Commonwealth was only liable for an "unreasonable" delay and that there was no evidence that the two months required for the removal of the facilities was "unreasonable."

The controversy was submitted to arbitration and the board found the ". . . obligation on the part of the employer to give his contractor free access to the site at which the work is to be performed free and clear of obstructions . . ." was not applicable in this situation, and that the ". . . spirit of the specifications includes

the removal of poles among the responsibilities thus imposed." The board awarded the contractor $2,270. on one excavation item caused by the delay.

The contractor appealed to the Court of Common Pleas of Dauphin County to modify this award, to include all damages caused by the delay. The Commonwealth contended that under the arbitration clause the award of the arbitrators was the final authority on questions of fact and of law, which contention is again made. The court below found that it had jurisdiction and concluded that the contractor covenanted to make no claim for damages for delay in the performance of his contract, when such delay was occasioned by the failure of utilities or others to remove structures from the site. The award of $2,270. for additional excavation costs was modified and reduced to $455.61 and all other claims of the contractor were refused. This appeal by the plaintiffs was then taken.

The Commonwealth's assertion that the arbitrator's award was the final authority on questions of fact and of law is without merit. In *Philadelphia Housing Authority v. Turner Construction Co.*, 343 Pa. 512, the Court had before it a contract of an agency of the Commonwealth which provided for arbitration which should be conclusive. In that case we said (p. 518): "Section 16 [Act of 1927] is mandatory and applies the provisions of the act of which it is a part to any written contract to which the Commonwealth or any agency thereof is a party." Again, in *Seaboard Surety Company v. Commonwealth*, 345 Pa. 147, the Court, confronted with the *identical* arbitration provision in a contract to build a section of state highway, held as follows (p.151): "Thus, it is clear that the Act of 1927 governs the award here under consideration, *even though the arbitration clause of the contract provides that the award shall be final and conclusive and there shall be no right of appeal.*"

The provisions of the contracts did not place the duty of securing the removal of the utility facilities upon

either party, and we find nothing which indicates that the Commonwealth agreed to secure the removal of the facilities, or deceived the contractor in this respect. The provisions under consideration did place the contractor upon notice that he was required to examine the site, investigate matters not under the control and supervision of the Commonwealth and notify all parties owning or controlling structures within the limits of the highway to remove or reset them. The only reasonable interpretation of the language of the contracts is that the Commonwealth agreed to deliver the site burdened with existing obstructions over which it exercised no direct control. From previous experience the contractor had reason to know that some delay would ensue, and the cost of such reasonable delay was a proper element of expense to be estimated and included in the bid.[1]

The authorities cited by counsel are not applicable in the present situation because both contracting parties had knowledge of pre-existing conditions under the immediate control of third persons which might delay the performance of the work. In *Henry Shenk Co. v. Erie County,* 319 Pa. 100, the Court refused to allow a general contractor to recover damages resulting from delay caused by third parties and events which were foresee-

---

[1] The appellant testified before the arbitrators as follows (p.23) : "Q. You made an investigation of the site before you submitted your bid? A. No. Q. Had you gone to the various utilities involved and asked them how long it would take them to move their facilities? A. No. Q. Do you have a computation of the time it required for the utilities to move their structures? A. No. Q. You had had experience with the delays that were encountered in securing the removal of public utilities on the other contract nearby? A. That is right. Q. Before you submitted your bid, you did not examine the situation, what utilities were involved and how long it would take for them to be removed? A. The reason I did not was this, due to the little time given to complete this job. Q. You had no talk about it before you put in your bid? A. No, that is why I did not do it, too little time. Q. It was advertised for at least two weeks? A. Yes. Q. You were considering it before you put in your bid? A. Yes."

able at the time the contract was entered into. *Union Paving Co. v. City of Philadelphia*, 95 Pa. Superior Ct. 342, was an action by a highway contractor to recover profits for work which could not be performed because of the failure of a transit company to complete preparatory steps. The Superior Court denied recovery, saying (p.345) : "Both parties to the contract knew that as a preliminary requisite, the taking up of the tracks by the transit company and the fixing of the street after the tracks, preparatory to the surfacing of the same, were required. *This was a contingency of which both were aware, but neither could control.* The city could not exact the performance of the contract where the transit company had not done its duty, nor could the contractor require anything of the city until such work was done."

In *Frederick Snare Corp. v. Philadelphia*, 325 Pa. 460, in a per curiam opinion, the Court refused to allow damages caused by delay in delivering the site for the construction of a retaining wall where both parties knew of the difficulties and delays which might occur and neglected to insert such a requirement in the contract. See also: *Frank v. Allegheny County*, 119 F. (2d) 614; *General Contracting & Engineering Co. v. United States*, 62 Ct. Cl. (F.) 433.

The appellant's remedy was to treat the failure to clear the site as a temporary impossibility and to refuse to perform: *Union Paving Co. v. City of Philadelphia*, supra; 2 Restatement of Contracts, section 462.[2] By continuing the work the appellant assumed the risk of delay and cannot now be heard to complain.

Judgment affirmed.

---

[2] Section 55 of the contract provides as follows : "The contractor shall not be required to proceed with the work of any contract if for any reason for which he is not responsible, exclusive of weather conditions, the work cannot be commenced within three (3) months from the date of execution of the contract, and in such case, at the request of the contractor, the contract may be declared null and void."