**LITTON RCS, INC., Movant,**

v.

**PENNSYLVANIA TURNPIKE COM-
MISSION, Respondent.**

Civ. A. No. 73–1902.

United States District Court,
E. D. Pennsylvania.

May 15, 1974.

Bruce W. Kauffman, Philadelphia, Pa., for movant.

Kenneth M. Cushman, Philadelphia, Pa., for respondent.

## OPINION
## [MEMORANDUM AND ORDER]

HUYETT, District Judge.

Litton RCS, Inc. (Litton) moves for confirmation of an arbitrators' award entered in its favor by a panel of the American Arbitration Association. The arbitration proceeding was conducted pursuant to the following arbitration provision contained in a contract between Litton's corporate predecessor Taller & Cooper, Inc. ("T&C") and the Pennsylvania Turnpike Commission ("Commission") :

> Any dispute between the parties hereto arising out of and under this agreement shall be submitted by them to the American Arbitration Association for arbitration of said dispute in accordance with its rules and the decision of said Association shall be binding upon all of the parties hereto.[1]

The Commission vigorously opposes confirmation of the award raising questions concerning the jurisdiction of this court, the authority of the arbitrators to enter the award, and the merits of the award.

The contract between T&C and the Commission, dated August 10, 1967, was a research and development agreement in which T&C agreed to use its best efforts to develop a modern weight classification system of toll collection equipment. Pursuant to a notice to proceed, Litton began work on the project on August 11, 1967. With the exception of research and development work on a "solid state" axle counting treadle, the agreement specified completion of all work up to installation of the equipment and personnel training within six months of the notice to proceed. Compensation was established on a cost plus a $20,000 fixed fee basis with T&C estimating total costs of $148,000. The Commission reserved the right to terminate the work required under the agreement at any time upon thirty (30) days prior written notice. It was contemplated by the parties that the toll equipment developed by T&C would be used to replace the Commission's existing equipment.

After an initial billing of $74,594.92 on April 30, 1968, it became evident that the project would not be completed within the agreed upon time and the cost restraints. On March 6, 1969, the Commission gave notice of termination effective April 6, 1969. Litton made further billings for which the Commission refused to make payment. The matter was submitted to arbitration and an award in favor of Litton for $228,897.54 was entered on July 20, 1973.[2]

The Commission has filed a motion to dismiss the action, and a motion to vacate or modify the arbitration award. Three grounds are urged in support of the motion to dismiss.

First, it is argued that only the Common Pleas Courts of the Commonwealth of Pennsylvania have jurisdiction to confirm the arbitrators' award. The contract between the parties does not express any understanding regarding a specific court to confirm the award. The Commission contends, however, that pursuant to the provisions of the Pennsylvania Arbitration Act of April 25, 1927, P.L. 381, § 1 et seq., 5 P.S. § 161 et seq., only the Pennsylvania Common Pleas Courts can confirm an arbitrator's award based on a contract involving a public agency or instrumentality. Section 16 of the Pennsylvania Arbitration Act, 5 P.S. § 176, states as follows:

> The provisions of this act shall apply to any written contract to which the Commonwealth of Pennsylvania, or any agency or subdivision thereof, or any municipal corporation or political division of the Commonwealth shall be a party.

---

1. Article XIV, Agreement between Pennsylvania Turnpike Commission and Taller & Cooper, Inc. dated August 10, 1967.

2. Litton's total billing was $303,492.46 of which only $74,594.92 has been paid by the Commission.

582

Federal and state court cases are relied on by the Commission for the proposition that § 16 of the Pennsylvania Arbitration Act, 5 P.S. § 176, is mandatorily applicable to all contracts to which the Commonwealth or its instrumentalities are a party. See Merritt-Chapman & Scott Corporation v. Pennsylvania Turnpike Commission, 387 F.2d 768 (3 Cir. 1967); Acchione v. Commonwealth, 347 Pa. 562, 32 A.2d 764 (1943). This is so even though applicability of the Act contravenes the express terms of the contract. See Seaboard Surety Co. v. Commonwealth, 345 Pa. 147, 27 A.2d 27 (1942); Philadelphia Housing Authority v. Turner Construction Co., 343 Pa. 512, 23 A.2d 426 (1942). Since the Commission is an instrumentality of the Commonwealth, Act of May 21, 1937, P. L. 774, No. 211, § 4 as amended 36 P.S. § 652d, any contract entered into by the Commission is governed by the Pennsylvania Arbitration Act.

Section 9 of the Pennsylvania Arbitration Act, 5 P.S. § 169, provides that "any party to the arbitration may apply to the court having jurisdiction for an order confirming the award, and thereupon the court shall grant such an order. . . ." Section 18 of the Pennsylvania Arbitration Act, 5 P.S. § 178, then defines "courts" as the "common pleas courts of the county having jurisdiction of the parties or the subject matter." Thus, it is reasoned that only the Pennsylvania Common Pleas courts have authority to entertain the motion to confirm the arbitrators' award.

Secondly, it is argued that as a result of the failure to state in the contract that a judgment of a court shall be entered upon the arbitrators' award, a federal court under § 9 of the United States Arbitration Act, 9 U.S.C. § 9 (1970) [3] lacks power to confirm the award. Varley v. Tarrytown Associates, Inc., 477 F.2d 208 (2d Cir. 1973) so held with respect to a contract arbitration clause that stated: "Any controversy arising under this agreement or breach thereof shall be settled by arbitration pursuant to the rules of American Arbitration Association." See also, Lehigh Structural Steel Co. v. Rust Engineering, 61 App. D.C. 224, 59 F.2d 1038 (1933).

Finally, with respect to the motion to dismiss, the Commission argues that the contract between the parties does not evidence a transaction involving commerce as required by § 2 of the United States Arbitration Act, 9 U.S.C. § 2 (1970). [4] It is thus contended that this court lacks jurisdiction to confirm the arbitrators' award under that Act.

In its motion to vacate or modify the arbitrators' award the Commission makes essentially three arguments. First, it is contended that the arbitrators lacked jurisdiction to grant an award because exclusive jurisdiction to hear claims against the Commission is cognizable only before the Board of Arbitration of Claims established pursuant

3. The pertinent portion of § 9 of the United States Arbitration Act, 9 U.S.C. § 9 (1970) provides as follows:

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. . . . .

4. Section 2 of the United States Arbitration Act, 9 U.S.C. § 2 (1970) provides as follows:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

to the Board of Arbitration of Claims Act, Act of May 20, 1937, P.L. 728, No. 193, § 1 et seq. as amended, 72 P.S. § 4651–1 et seq.[5] In support of this position the Commission does not rely on any explicit provision of exclusivity contained in the Board of Arbitration of Claims Act. Rather the Commission bases its argument of exclusivity on the state doctrine of sovereign immunity.

It is contended that, under the Act creating the Commission,[6] the Commission is an instrumentality of the Commonwealth, and "functions as the 'alter ego' of the Commonwealth in the performance of essential governmental functions and is subject to the same immunity conferred upon the Commonwealth by Article 1, Section 11 of the Pennsylvania Constitution [P.S.]." [7] Although it is

5. The pertinent provisions of the Board of Arbitration of Claims Act, Act of May 20, 1937, P.L. 728, No. 193, § 1 et seq., as amended, 72 P.S. § 4651—1 et seq. provide as follows:

§ 4651—1. *Board created to arbitrate claims against state*

There is hereby created a departmental administrative board in the Department of the Auditor General, known as the Board of Arbitration of Claims, the duty of which shall be to arbitrate claims against the Commonwealth arising from contracts entered into by the Commonwealth. Such board shall consist of three members appointed by the Governor, one of whom shall be learned in the law and shall be chairman of the board, another of whom shall be a registered civil engineer. The third member of the board shall be a citizen and resident of the Commonwealth not learned in the law or an engineer. Two members of the board shall constitute a quorum. The members shall be appointed for terms of two, four, and six years, and shall serve until their respective successors shall be duly appointed and qualified. Their successors shall each be appointed for a term of six years. In the event any member shall die or resign during his term of office the Governor shall appoint a successor who shall hold office for such unexpired term.

§ 4651—4. *Powers of board*

The Board of Arbitration shall have jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300.00 or more.

§ 4651—6. *Procedure*

The board shall have no power and exercise no jurisdiction over a claim asserted against the Commonwealth unless the claim shall have been filed within six months after it accrued. The claimants shall advise the department involved, in writing, of such claim, specifying the details thereof, and shall, within the same period, file with the secretary of the board a concise and specific written statement of this claim, signed and verified by the claimant before an officer authorized to administer oaths.

§ 4651—8. *Hearings; opinions; awards; costs; appeals*

(a) All hearings before the board shall be public and shall be governed by all of the rules of Pennsylvania Civil Procedure not inconsistent with this act. After consideration of the pleadings filed with it and the testimony given at the hearing before it, the board shall either dismiss the claim of the claimant or make an award in favor of the claimant of such sum as it shall determine the claimant is legally and rightfully entitled to receive, and shall enter its said action in a book to be kept by it for that purpose. It shall file a written opinion, setting forth the reasons for its action. The board in dismissing any claim or in making any award shall dispose of all costs of the proceedings by providing for the payment thereof by the Commonwealth or by the claimant, or by providing that such costs shall be shared by the said parties in such proportions as the board in its discretion shall direct.

(b) Within thirty (30) days after dismissing the claim or making an award, any party aggrieved thereby, including the Commonwealth, shall have a right of appeal therefrom. Such appeal shall be taken to the Court of Common Pleas of Dauphin County. Parties interested in such an order including the Commonwealth, jointly, severally or otherwise, may join in an appeal therefrom even though all of the interested parties do not join therein.

(c) The court shall hear the appeal without a jury on the record certified by the board. After hearing, the court shall affirm the order unless it shall find that the same is not in accordance with law. The findings of the board as to the facts, if supported by substantial evidence, shall be conclusive. If the order is not affirmed, the court may set aside or modify, in whole or in part, or may remand the proceeding to the board for further disposition in accordance with the order of the court.

6. Act of May 21, 1937, P.L. 774, No. 211, § 1 et seq., as amended, 36 P.S. § 652a et seq.

7. Pennsylvania Turnpike Commission's memorandum of law in support of motion to vacate or modify arbitration award at 6.

admitted that the Commission has the power to sue and be sued,[8] that exception to sovereign immunity must be strictly construed to provide a remedy for claims arising from contracts with the Commission enforceable by arbitration only before the Board of Arbitration of Claims.

Maintenance of the Commission's position that the Board of Arbitration of Claims Act provides the exclusive procedure governing arbitration with the Commission necessitates arguing that the Board of Arbitration of Claims Act impliedly repealed § 16 of the Pennsylvania Arbitration Act, 5 P.S. § 176. The two Acts are said to be incompatible in two respects. The Pennsylvania Arbitration Act, by failing to speak to the issue, incorporates rules governing private arbitration into contracts with the Commission. The result is that there exists no explicit statutory rule concerning when arbitration must be demanded under a contract with the Commission. Absent an express provision in the contract to the contrary, when a party to a contract containing provision for arbitration may seek the arbitration of a claim arising under the contract will depend on the scope of the arbitration clause and the breadth in terms of time given to this clause by the parties in their agreement. See United States Fidelity and Guaranty Co. v. Bangor Area Joint School Authority, 355 F.Supp. 913 (E.D.Pa.1973). The Arbitration of Claims Act, however, provides that any claim against the Commonwealth and its instrumentalities must be brought before the Board of Arbitration of Claims within six months after the claim accrues.[9] Furthermore, the forums in which arbitration takes place are in conflict under the two Acts. The Pennsylvania Arbitration Act leaves the matter to the parties; the Arbitration of Claims Act establishes a particular body whose members are appointed in a certain manner to hear claims against the Commonwealth and its instrumentalities.[10]

The second contention proffered by the Commission in support of its motion to vacate or modify the arbitrators' award is that, assuming the lack of exclusive jurisdiction before the Board of Arbitration of Claims, the contract between T&C and the Commission is not subject to arbitration because it was a contract for personal services under the Pennsylvania Arbitration Act.[11] The contract with T&C is characterized by the Commission as a personal services contract similar to a contract existing between an architect or engineer and a public body. See Stratton v. Allegheny County, 245 Pa. 519, 91 A. 894 (1914).

Finally, the Commission makes a series of arguments which attempt to demonstrate that the arbitrators' award was unlawful. Thus, it is argued that Litton failed to show as a condition precedent to recovery that the contract between T&C and the Commission had been approved by the Department of Highways, that Litton failed to tender all parts of the toll collection equipment as required by the contract, and that Litton in various ways had breached the contract.

Given this welter of conflicting contentions we consider it best to begin our discussion by stating some well established propositions of law touching on the issues before us, and with these in

8. Act of May 21, 1937, P.L. 774, No. 211, § 4, 36 P.S. § 652d.

9. Act of May 20, 1937, P.L. 728, No. 193, § 6, 72 P.S. § 4651—6.

10. Act of May 20, 1937, P.L. 728, No. 193, § 1, 72 P.S. § 4651—1.

11. Act of April 25, 1927, P.L. 381, No. 248, § 1, 5 P.S. § 161 provides as follows:
A provision in any written contract, except a contract for personal services, to settle by arbitration a controversy thereafter arising out of such contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

mind a proper analysis can be made of the issues presented to us.

In respect to subject matter jurisdiction, it is clear that the United States Arbitration Act, 9 U.S.C. § 1 et seq., does not provide an independent source of federal jurisdiction. Jett v. Zink, 474 F.2d 149, 156 at n. 12 (5 Cir. 1973), cert. denied, Sterling Oil of Okl. v. Chamberlain, 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 104 (1973); Collins Radio Co. v. Ex-Cell-O Corporation, 467 F.2d 995, 996 at n. 1 (8 Cir. 1972); Monte v. Southern Delaware County Authority, 321 F.2d 870, 874 (3 Cir. 1963); Ballantine Books, Inc. v. Capital Distributing Co., 302 F.2d 17, 19 (2 Cir. 1962); Metro Industrial Painting Corp. v. Terminal Construction Co., 287 F.2d 382, 384 (2 Cir. 1961) cert. denied sub. nom., Metro-Goldwyn Pictures Corp. v. Sheldon, 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961); Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402, 408 (2d Cir. 1959), cert. granted, 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, petition for cert. dismissed per stipulation, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37

(1960). Subject matter jurisdiction must exist either as a result of diversity of citizenship between the parties, 28 U.S.C. § 1332 (1970), or as a result of federal question jurisdiction, 28 U.S.C. § 1331 (1970), arising under a statute other that the United States Arbitration Act. Robert Lawrence Co. v. Devonshire Fabrics, Inc., *supra.* Subject matter jurisdiction exists in this case. The parties are of diverse citizenship and the matter in controversy is well over $10,000 exclusive of interests and costs. No other basis of jurisdiction has been asserted.[12]

When construing an agreement providing for arbitration in which subject matter jurisdiction is based on diversity of citizenship, a federal court must first determine whether state law dealing with arbitration agreements or federal substantive law as provided by the United States Arbitration Act is applicable. The United States Arbitration Act will govern construction of the arbitration agreement when the contract evidences a transaction "involving commerce."[13] If the contract does not

12. The Commission's arguments concerning the protection afforded the Commission by state law sovereign immunity does not affect our determination that subject matter jurisdiction exists in this case. In support of its motion to vacate the arbitrators' award the Commission has cited state law holding that the Commission is the "alter ego" of the state. *See* Rader v. Pennsylvania Turnpike Commission, 407 Pa. 609, 182 A.2d 199 (1962). A suit against the Commission is thus a suit against the State.

If as a matter of federal law the Commission is the "alter ego" of the state, we would lack subject matter jurisdiction under the diversity statute. Harris v. Pennsylvania Turnpike Commission, 410 F.2d 1332, 1333 at n. 1 (3 Cir. 1969). The diversity statute provides for suits between citizens of different states. A state is not a citizen of a state for diversity of citizenship jurisdiction purposes. Highway Comm. v. Utah Co., 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262 (1929); S. J. Groves & Sons Co. v. New Jersey Turnpike Authority, 268 F.Supp. 568 (D.N.J.1967). And there is no question of waiver or consent to be sued as there is when analyzing whether suit against a state

based on federal question jurisdiction is barred by the Eleventh Amendment to the United States Constitution. Diversity of citizenship jurisdiction as provided by statute under 28 U.S.C. § 1332 simply does not comprehend a suit by or against a state.

We think it sufficiently settled by the authorities that the Pennsylvania Turnpike Commission is not the "alter ego" of the state as a matter of federal law. See Masse v. Pennsylvania Turnpike Commission, 163 F.Supp. 510 (E.D.Pa.1958); Linger v. Pennsylvania Turnpike Commission, 158 F.Supp. 900 (W.D.Pa.1958); Eastern Motor Express, Inc. v. Espenshade, 138 F.Supp. 426 (E.D.Pa.1956); Lowes v. Pennsylvania Turnpike Commission, 125 F.Supp. 681 (M.D.Pa.1954); Darby v. De Felice & Son, Inc., 94 F.Supp. 535 (E.D.Pa.1950); Hunkin-Conkey Const. Co. v. Pennsylvania Turnpike Commission, 34 F.Supp. 26 (M.D.Pa.1940); *Cf.* Harris v. Pennsylvania Turnpike Com'n, 410 F.2d 1332, 1333, n. 1 (3 Cir. 1969). Thus, there exists diversity of citizenship jurisdiction.

13. The Act also governs arbitration agreements involved in any maritime transaction. These terms are defined in § 1 of the United

evidence a transaction involving commerce, state law will apply. Bernhardt v. Polygraphic Co., 350 U.S. 198, 76 S. Ct. 273, 100 L.Ed. 199 (1956); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

■ It is clear that the contract before us is one evidencing a transaction involving commerce. In Prima Paint Corp. v. Flood & Conklin Mfg. Co., *supra*, the Supreme Court held that a "Consulting Agreement" was a contract evidencing a transaction involving commerce. Flood & Conklin, recently acquired by Prima Paint, agreed to furnish advice and consultation "in connection with the formulae, manufacturing operations, sales and servicing of Prima Trade Sales accounts." The services were to be performed personally by Flood & Conklin's chairman. Flood & Conklin also agreed not to compete with Prima Paint for sales of paint or paint products in its existing territory or to current customers.

In finding that the contract evidenced a transaction involving commerce, the Court went beyond the four corners of the contract and considered an affidavit filed in the District Court by Prima Paint's president. It was evident that the consulting agreement was part of a plan to secure Flood & Conklin's assistance in arranging the transfer of manufacturing and selling operations from New Jersey to Maryland.

Furthermore, as stated by the concurring opinion in Metro Industrial Painting Corp. v. Terminal Construction Co., 287 F.2d 382, 387 (2 Cir. 1961), cert. denied sub nom., Metro-Goldwyn Pictures Corp. v. Sheldon, 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961):

The significant question, therefore, [in determining whether a contract evidences a transaction involving commerce] is not whether, in carrying out the terms of the contract, the parties did cross state lines, but whether, at the time they entered into it and accepted the arbitration clause, they contemplated substantial interstate activity.

See also, Monte v. Southern Delaware County Authority, 212 F.Supp 604, 610 (E.D.Pa.) aff'd as to this point, 321 F. 2d 870 (3 Cir. 1963).

The following factors relating to the contract between the parties clearly evidence a transaction involving commerce:

1. "The Commission owns and operates the Pennsylvania Turnpike System . . . a continuous roadway from the Ohio State line to the New Jersey State line . . . and in connection therewith operates a closed system of toll collection equipment. . . ."

2. "The Commission desires to cause to be developed . . . a prototype of the most modern weight classification system of toll collection equipment . . . for the purpose of replacing its present toll equipment . . . ."

3. "Developer agrees [if a specified condition occurs] . . . it will manufacture and produce . . . the new toll collection equipment at a cost to the Commission to be determined . . . and, thereafter, will provide the Commission, at a reasonable cost, with all necessary

States Arbitration Act, 9 U.S.C. § 1, as follows:

"Maritime transactions", as herein defined, means charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction; "commerce", as herein defined, means commerce among the several States or with foreign nations or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

components to keep the equipment in full and efficient operating condition."

4. Article VI (pp. 6–7) provides a detailed agreement concerning the production and manufacture of toll equipment based upon the prototype.

5. Article VII (pp. 7–8) is a binding agreement that Developer will service and maintain in Pennsylvania the equipment which it elsewhere has agreed to manufacture in New York or New Jersey.

6. Article IX (pp. 8–9) contemplates sales of the toll equipment based on the prototype to other third parties, anywhere in the United States or the world, and allows the Commission a percentage right.

7. Article I, Subparagraph E (Appendix P–5) provides for installation by Litton personnel of prototype equipment in Pennsylvania for operational testing. Such testing in fact took place.

The United States Arbitration Act, therefore, supplies the law applicable to the issues before us. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., *supra.*

■ Having determined that we have subject matter jurisdiction and that the United States Arbitration Act supplies the substantive law applicable, we must next consider the challenges to the arbitrators' authority to adjudicate the dispute and this court's authority to confirm the arbitrators' award. It is necessary to consider these matters since § 2 of the United States Arbitration Act, 9 U.S.C. § 2, provides that agreements to arbitrate are "valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*" (emphasis supplied).[14] And as the Supreme Court held in Bernhardt v. Polygraphic Co., *supra* the provisions of §§ 1 and 2 of the Act are equally applicable to the remaining sections of the Act including § 9 dealing with confirmation of the award. Thus, grounds for revocation of the contract to arbitrate under § 2 of the Act would also provide grounds for revocation of the contract to confirm the award under § 9 of the Act.

■ The challenges made by the Commission concerning (1) the arbitrability of the dispute before the privately chosen arbitrators as opposed to the Board of Arbitration of Claims, (2) the arbitrability of a dispute involving a contract for personal services, and (3) the confirmation of an arbitration award by a court other than a common pleas court, while often couched in jurisdictional terms, essentially argue the *lack of authority* in the Commission to contract in the manner in which it has contracted.[15] If, for example, state law prohibits a public instrumentality from agreeing to have an arbitrator's award confirmed in a court other than a common pleas court, the defense that the Commission has acted *ultra vires* may be available to it under the United States Arbitration Act if such a defense would constitute "grounds as exist at law or in equity for the revocation of any contract." *Accord,* American Airlines, Inc. v. Louisville & Jefferson C.A.B., 269 F. 2d 811, 816 (6 Cir. 1959). The essential inquiry therefore becomes whether the claimed lack of authority in the Commission to contract as it did constitutes grounds for revocation under the United States Arbitration Act.

The contract between T&C and the Commission provided for arbitration before the American Arbitration Association. It is now contended that this method of arbitration was unlawful under state law. No specific provision of state law is cited for this contention.

14. It would appear that the word "revocation" in § 2 of the Act would refer only to the agreement to arbitrate and would not preclude a suit on the contract. See 11 Williston on Contracts § 1420A at n. 19 (3rd ed. by Jaeger 1968).

15. The other contentions raised by the Commission concerning the alleged breach by Litton of the contract argue only the incorrectness of the arbitrators' award and not their authority to hear the dispute or this court's authority to confirm the award.

Rather, the state doctrine of sovereign immunity is relied on for the proposition that any waiver of sovereign immunity must be strictly construed, and, as strictly construed, only arbitration before the Board of Arbitration of Claims is permissible. Any implication contained in the Pennsylvania Arbitration Act that private arbitration involving a public instrumentality is tolerable cannot stand.

 We do not consider it necessary to determine whether application of Pennsylvania's doctrine of sovereign immunity and the existence of a state Board of Arbitration of Claims negates the allowance of private arbitration involving a public instrumentality such as the Commission.[16, 17] We hold as a matter of federal substantive law under the United States Arbitration Act that before a state may limit the conditions under which a public instrumentality, otherwise possessing the power to arbitrate,

may contract to arbitrate it must do so in a clear and express manner. Implications arising from state doctrines of common law sovereign immunity will not overrule the strong federal policy contained in § 1 of the U.S. Arbitration Act that contracts to arbitrate are valid, irrevocable and enforceable.

 The provisions of the Arbitration of Claims Act do not provide the clear and express limitation on private arbitration required under the United States Arbitration Act. That the Board of Arbitration of Claims has the power "to hear and determine all claims against the Commonwealth arising from contracts . . . entered into with the Commonwealth" does not indicate that the Board has the sole power to hear such claims. The Commission's reliance on the state law doctrine of sovereign immunity belies any argument that the Board of Arbitration of Claims Act clearly and expressly precludes private arbitration.[18]

---

16. The Commission under state law is protected by the doctrine of sovereign immunity and not governmental immunity which has now been abolished in Pennsylvania. Ayala v. Philadelphia Board of Public Education, 453 Pa. 584, 305 A.2d 877 (1973). The doctrine of sovereign immunity still maintains its viability. Brown v. Commonwealth, 453 Pa. 566, 305 A.2d 868 (1973). See also, Skehan v. Board of Trustees of Bloomsburg State College, 501 F.2d 31 (3 Cir. filed May 3, 1974).

17. The Commonwealth Court has recently held that the Commission is bound by private arbitration despite any implications to the contrary in the Board of Arbitration of Claims Act. Pennsylvania Turnpike Commission v. Sanders & Thomas, 12 Pa. Cmwlth. 145, 316 A.2d 127 (1974).

18. It should be clear that when we speak of state law sovereign immunity, we do not refer to notions of sovereign immunity embodied in the Eleventh Amendment to the United States Constitution. The Eleventh Amendment states:

The Judicial power of the United States shall not, be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Supreme Court has noted the distinction between common law sovereign immunity and the sovereign immunity embedded in the Eleventh Amendment.

In Employees of Department of Public Health and Welfare v. Department of Public Health and Welfare, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973) Justice Douglas, writing for the Court, rejected Justice Brennan's analysis that the Eleventh Amendment does not embody any notion of state sovereign immunity and that common law sovereign immunity had been surrendered by the states when they granted Congress power to regulate commerce. In speaking to Justice Brennan's dissent Justice Douglas states:

The dissent argues that "Parden [v. Terminal R.Co., 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964)] held that a federal court determination of such suits cannot be precluded by the doctrine of sovereign immunity because the States surrendered their sovereignty to that extent when they granted Congress the power to regulate commerce." Post, at 299. But, the plain language of the Court's opinion in Parden belies this assertion. For example, the Court stated:

"Recognition of the congressional power to render a State suable under the FELA does not mean that the immunity doctrine,

The remaining issues concern the Commission's authority to enter into agreements providing for (1) the arbitration of an alleged contract for personal services [19] and (2) the confirmation of an award in a court other than a court of common pleas. Both these arguments raise the same issues: (1) whether the provisions of the Pennsylvania Arbitration Act constitute clear and express limitations on the power of a public instrumentality to contract in a manner contrary to that Act and (2) if so, whether under the United States Arbitration Act the lack of such authority to contract provides a ground which exists "at law or equity for the revocation of any contract."

As we have noted § 16 of the Pennsylvania Arbitration Act, 5 P.S. § 176, makes the Act mandatory in all written contracts providing for arbitration to which the Commonwealth or any of its agencies is a party. Section 1 of the

---

as embodied in the Eleventh Amendment with respect to citizens of other States and as extended to the State's own citizens by the Hans case, is here being overridden. It remains the law that a State may not be sued by an individual without its consent." 377 U.S., at 192. [84 S.Ct. at 1213] The Court then repeated that "[a] State's immunity from suit by an individual without its consent has been fully recognized by the Eleventh Amendment and by subsequent decisions of this Court." Id., at 196. [84 S.Ct., at 1215] As we read these passages, and clearly as the dissent in Parden read them, id., at 198, [84 S.Ct. 1207] they dealt with constitutional constraints on the exercise of the federal judicial power. Moreover, if Parden was concerned merely with the surrender of common law sovereign immunity when the States granted Congress the power to regulate commerce, it would seem unnecessary to reach the question of waiver or consent, for Congress could subject the States to suit by their own citizens whenever it was deemed necessary or appropriate to the regulation of commerce. No more would be required. But, there can be no doubt that the Court's holding in Parden was premised on the conclusion that Alabama, by operating the railroad, had consented to suit in the federal courts under FELA. Id., at 186, 84 S.Ct. 1207.

411 U.S. at 280–281, n. 1.

More recently in Edelman v. Jordan, 42 U.S.L.W. 4419, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) Justice Rehnquist writing for the Court noted:

Respondent urges that the State of Illinois has abolished its common-law sovereign immunity in its state courts, and appears to argue that suit in a federal court against the State may thus be maintained. Brief for the Respondent, at p. 23. Petitioner contends that sovereign immunity has not been abolished in Illinois as to this type of case. Brief for the Petitioner, at pp. 31–36. Whether Illinois permits such a suit to be brought is not determinative of whether Illinois has relinquished its Eleventh Amendment immunity from suit in the federal courts. Chandler v. Dix, 194 U.S. 590, 591–592, [24 S.Ct. 766, 48 L.Ed. 1129] (1904).

42 U.S.L.W. at 4427, n. 19. [94 S.Ct. at 1363]

Since we have held that as a matter of federal law the Commission is not the "alter ego" of the state, supra n. 12, we deal here only with common law sovereign immunity. The policies of the United States Arbitration Act, binding on both federal and state courts, Robert Lawrence v. Devonshire, supra, when dealing with an arbitration provision evidencing a transaction involving commerce override a state's common law sovereign immunity. Different considerations would be involved if the contract in question did not evidence a transaction involving commerce, and we were therefore bound by Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to follow state law. In the final analysis, however, we would reach the same conclusion in respect to the Commission's authority to arbitrate before a private body since we would be in agreement with the Commonwealth Court's decision in Pennsylvania Turnpike Commission v. Sanders & Thomas, supra, n. 17.

Different considerations would also be involved if the Commission were considered the "alter ego" of the state for Eleventh Amendment purposes. In that situation we would lack jurisdiction since no federal question jurisdiction would exist to hear this dispute. Supra, n. 12.

19. We assume for purposes of the following discussion that the contract is one for personal services. Since we hold that authority to confirm the award rests in the Court of Common Pleas, we do not reach the issue whether the contract is one for personal services.

**590**

Act, 5 P.S. § 161, excepts from its provisions contracts for personal services. Section 9, 5 P.S. § 169, requires confirmation of awards in "the court having jurisdiction." Finally, section 18, 5 P.S. § 178, defines courts as the courts of common pleas.

In Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Commission, 387 F.2d 768 (3 Cir. 1967) the court construed an earlier decision of the Third Circuit, Monte v. Southern Delaware County Authority, 321 F.2d 870 (1963), as holding that § 18 of the Pennsylvania Arbitration Act, 5 P.S. § 178, deprived a federal court of power to confirm an arbitration award when the parties in their contract provided for arbitration pursuant to Pennsylvania law. The Merritt-Chapman court also noted that the Pennsylvania Supreme Court had held on several occasions that § 16 of the Pennsylvania Arbitration Act, 5 P.S. § 176, automatically has the effect of drawing into the agreement the Pennsylvania Act even when the parties are silent with regard to the Act's applicability. See Philadelphia Housing Authority v. Turner Construction Co., 343 Pa. 512, 518, 23 A.2d 426, 429 (1942); Seaboard Surety Co. v. Commonwealth, 345 Pa. 147, 151, 27 A.2d 27, 29 (1942); Acchione v. Commonwealth, 347 Pa. 562, 565, 32 A.2d 764, 765 (1943).

■ The Monte court felt bound by the provisions of the Pennsylvania Arbitration Act even though the parties in their contract made only general reference to the applicability of state law to the contract. Furthermore, it is clear that the court's reliance on the contract's reference to state law was considered as simply supportive of its view that the state arbitration act applied to a contract for arbitration involving a state public agency. In light of these authorities, we are compelled to hold that the provisions of the Pennsylvania Arbitration Act constitute an express limitation on the authority of the Com-

mission to contract in a manner contrary to the Act.

■ Finally, with respect to whether such lack of authority under state law to contract is cognizable under the United States Arbitration Act, it is significant that the Monte court explicitly held that federal substantive law as provided in the United States Arbitration Act governed the issue before the court. Application of state law did not conflict with federal substantive law since federal law provides for incorporation of state law governing enforceability of contracts. It is only when state law contravenes the express provisions of the United States Arbitration Act that state law must fall. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., supra.

■ This conclusion is merely a recognition of the limited, though clear, purpose of Congress in enacting the United States Arbitration Act. Congress intended to make agreements to arbitrate as enforceable as any other contract and to disabuse courts of the notion that agreements to arbitrate constitute an "ousting" of a court's jurisdiction. As one commentator has stated:

> It seems clear that it was the purpose and intent of the Congress to make arbitration agreements as enforceable as other contracts, but not more so. To immunize an agreement from judicial challenge on the ground of fraud in the inducement would be to evaluate it over other forms of contract—a situation inconsistent with the saving clause [of § 2 of the Act]. Moseley Electronic Facilities, 374 U.S. 167, [83 S.Ct. 1815, 10 L.Ed.2d 818] (1963).

11 Williston on Contracts § 1420A at 723 n. 16 (3rd by Jaeger 1968). Thus, we conclude that the Pennsylvania Arbitration Act is a clear and express limitation on the authority of the Commission to contract in a manner contrary to that Act and that such lack of authority is cognizable under the United States Arbi-

tration Act to avoid enforcement of a contract for personal services [20] or of an agreement to have an arbitration award confirmed in a court other than a common pleas court. See American Airlines, Inc. v. Louisville & Jefferson C.A. B., 269 F.2d 811 (6 Cir. 1959).

One final matter must be discussed. Litton has implied in its briefs that any holding by this court that only the common pleas courts can entertain a motion to confirm an arbitrator's award arising out of a contract with the Commission would contravene Litton's constitutional right to have a federal court hear the motion to confirm the award when federal diversity jurisdiction exists over the controversy. Indeed, language by the courts in the *Monte* and *Merritt-Chapman* cases intimate that there may be some impediment to holding that a state may provide authority to obtain confirmation of arbitration awards only in state courts.

We consider the Supreme Court's decision in The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1970) to have substantially dissipated any notion that agreements to obtain arbitration or to confirm an arbitration award in a particular forum constitutes an impairment of a court's jurisdiction. In *The Bremen* the Court enforced a forum-selection clause to have disputes arising out of a contract between the parties enforced in the London Court of Justice. The agreement was enforced even though there clearly existed admiralty jurisdiction in the federal courts. In speaking to the question of the federal court's jurisdiction the Court stated:

> The argument that such clauses [forum selection] are improper because they tend to "oust" a court of jurisdiction is hardly more than a vestigial legal fiction. It appears to rest at core on historical judicial resistance to any attempt to reduce the power and business of a particular court and has little place in an era when all courts are overloaded and when businesses once essentially local now operate in world markets. It reflects something of a provincial attitude regarding the fairness of other tribunals.

407 U.S. *supra* at 12.

It is, of course, true that in the case *sub judice* the agreement is silent on what court is to hear a motion to confirm the award. The significance of *The Bremen*, however, is that it makes clear that the issues before us involve matters of contract law and do not imply any unlawful or unconstitutional action by the state to restrict federal jurisdiction. The provisions of the Pennsylvania Arbitration Act are mandatory only with respect, of course, to state agencies and municipalities and then only when the parties agree to provide for arbitration of disputes. There is no attempt by the state to restrict private parties' bargaining power in such a way as to limit federal court jurisdiction. See Insurance Co. v. Morse, 20 Wall. (87 U.S.) 445, 22 L.Ed. 365 (1874).

The motion to confirm the arbitrators' award will be denied.[21]

---

20. In view of our disposition of this case we do not reach the issue whether the language used in the arbitration clause is sufficient to allow this court under § 9 of the United States Arbitration Act, 9 U.S.C. § 9, to confirm the award. See Varley v. Tarrytown Associates, *supra*.

21. It may be argued that our disposition in this case places Litton in an unenviable position in state court. Litton may well fear that since the issues relating to the Pennsylvania Arbitration Act are to be adjudicated in state court, the state court may feel bound by the Commission's argument concerning the Board of Arbitration of Claims Act which argument we have rejected.

Litton's fears are, however, unfounded. Since this contract involves commerce, federal substantive law will govern in state court. Robert Lawrence Co. v. Devonshire Fabrics, Inc., *supra*. The state courts are as competent to enforce federal law as is a federal court.